[No. 5770-1-II.   Division Two.   October 12, 1983.]

THE STATE OF WASHINGTON, *Respondent*, v. DENCIL
RUDOLPH HARPER, *Appellant*.

*Stuart A. Halsan*, for appellant.

*James R. Miller, Prosecuting Attorney*, for respondent.

PETRIE, J.—By jury verdict, Dencil Rudolph Harper was convicted of the crime of indecent liberties by having sexually contacted his 11–year–old stepdaughter. RCW 9A.44-.100(1)(a).[1] He contends on appeal, primarily, that he was

---

[1]Another count in the same information charged defendant with the crime of indecent liberties inflicted upon his 15–year–old daughter in violation of RCW 9A.44.100(1)(b). The jury acquitted him of that charge.

denied a constitutionally guaranteed fair trial by reason of a series of trial court errors which resulted from the prosecution's successful presentation of improper evidence and the denial of his right to present proper evidence. We agree and, accordingly, reverse and remand for new trial.

At trial, the child victim testified that, one night in October 1980, defendant sent his 15–year–old daughter out of the house on an errand to round up some strayed chickens. The alleged molestation occurred while the older girl was gone. The child victim responded affirmatively to the deputy prosecuting attorney's inquiry as to whether, while the older child was temporarily absent, "Rudy [defendant] put his thing he goes to the bathroom with in your mouth, . . ." On cross examination, she responded, "Yeah," when asked, "Were you spanked a lot for not telling the truth?" Indeed, throughout the trial the defense suggested that both girls, particularly the older child, had fabricated their stories as acts of retribution because they believed defendant had unjustly punished them on several occasions.

The victim's 15–year–old stepsister testified that when she returned to the house, defendant, clad only in his shorts, ran to the bathroom. The older child also testified that when she and her younger stepsister went to bed that same night, "She told me that my dad made her put his penis in her mouth." Both children testified that they told defendant's wife about this incident but nothing was done about it until the 15–year–old told her "real" mother about the incident in December. At that time the police and the Children's Protective Services of the Department of Social and Health Services became involved.

A caseworker with DSHS testified that she talked to the 11–year–old victim in January 1981. Over defense objection, the caseworker testified that the child said defendant had her "suck his penis." The caseworker also testified that she had been present a number of times when statements of the victim were taken, and then responded affirmatively to the prosecutor's question, "Has she [the victim] always been consistent in her representations?"

■ We consider first the test for determining the admissibility of these "prior consistent statements" which were admitted for substantive purposes to prove the fact asserted. We start with the categorical statement that ER 801(d)(1)[2]—which declares that a prior consistent statement by a witness is not "hearsay"—is not the all–inclusive source for determining its admissibility. The rule, though it expands the significance of the statement (once admitted), is procedurally only a limitation on admissibility. For initial determination of admissibility we look to common law rules of evidence or to other portions of the judicially pronounced rules which govern admissibility.

The first and universally necessary criterion is relevancy. *See* ER 401. The general rule is that a witness' testimony cannot be corroborated or bolstered by presenting to the fact finder evidence that the witness made the same or similar statements out of court—for the simple reason that repetition is not generally a valid test for veracity. *Thomas v. French,* 99 Wn.2d 95, 659 P.2d 1097 (1983). Nevertheless, when a witness' testimony has been discredited by an imputation of motive to falsify,

> his consistent statements *made at a time anterior to the date of the facts, from which the motive to falsify is inferred,* tend to show that bias or prejudice did not motivate his testimony.

(Italics ours.) *Sweazey v. Valley Transp., Inc.,* 6 Wn.2d 324, 333, 107 P.2d 567, 111 P.2d 1010, 140 A.L.R. 1 (1940). Under those circumstances, the prior consistent statement has some proof tendency to support the witness' in–court

---

[2]ER 801(d)(1) provides:

"(d) Statements Which Are Not Hearsay. A statement is not hearsay if—

"(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (iii) one of identification of a person made after perceiving him; . . ."

testimony—and it is therefore admissible. Commenting on the federal counterpart of ER 801(d)(1)(ii), Judge Weinstein observed quite cogently:

Substantive use under Rule 801(d)(1)(B) is limited to situations where high probative value is most likely. Evidence which counteracts a suggestion that the witness changed his story in response to some threat or scheme or bribe by showing that his story was the same prior to the external pressure is highly relevant in shedding light on the witness' credibility. Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force "for the simple reason that mere repetition does not imply veracity."

(Footnotes omitted.) 4 J. Weinstein & M. Berger, *Evidence* ¶ 801(d)(1)(B)[01], at 801–117 to –118 (1981).

In the case at bench, defendant attempted to shake the jury's confidence in the integrity of the child victim (1) by obtaining the admission on cross examination that she had told untruths in the past, and (2) by implying that she and her older stepsister were motivated to falsify these accusations against him by reason of his past role in the family as the (unjust) disciplinarian. The caseworker's testimony, about the child's recital of the event more than 2 months after the event and about the child's repeated recitation of the same story thereafter, tended in no way to rebut either basis for the attempted impeachment. Accordingly, it was completely irrelevant and should not have been admitted. ER 402. Because such testimony was highly prejudicial, perhaps devastating, to the defense of this heinous crime, we must reverse the conviction and remand for new trial.

Ordinarily we would terminate this opinion at this point; but, because of the nature of other assignments of error presented by both parties, we deem it expedient to comment briefly on several of them in an attempt to assist the trial court on retrial.

The older child's testimony of the victim's recital, when they both went to bed (obviously a short time after the event), was properly admitted, not as a prior consistent

statement, but as an unreflective utterance. *State v. Bray,* 23 Wn. App. 117, 594 P.2d 1363 (1979). The fact that the older sister was also a victim in the other count of the information affects only the weight of her testimony, not its admissibility.

After the State rested its case, defendant offered to present three character witnesses who would testify as to his good reputation for truthfulness in the community. When the State objected on the ground that defendant's character for truthfulness was not a "pertinent trait of his character" (ER 404(a)(1)) regarding the charges for which he was on trial, defense counsel assured the court that he would not call any character witnesses until the defendant testified and totally contradicted the testimony that had already been admitted. At that point, counsel contended, "there is an attack on his character for truthfulness, an attack on his credibility." When the trial court ruled that such evidence would be admitted, the prosecutor indicated that he would then cross-examine each character witness as to whether the witness knew that defendant had previously been convicted of several misdemeanors. The prosecutor enumerated convictions of driving while intoxicated, simple assault and resisting arrest. The trial court ruled that the prosecution would be limited in its cross examination to one question which the court ordered the prosecution to submit in writing but which, unfortunately, has not been preserved on appeal.

Defendant's right, *as an accused,* to present character witnesses is governed by ER 404(a)(1); if he is a *witness,* by ER 608(a). As an accused, even if he does not testify in his own behalf, he may present character witnesses who know of his reputation, at the appropriate time and place, to establish "a pertinent trait of his character". ER 404(a) and 405. Defendant's character trait for truthfulness is not a trait pertinent to the charge of indecent liberties;[3] rather,

---

[3]We note in *State v. Styles,* 93 Wn.2d 173, 606 P.2d 1233 (1980) the crime charged was assault in the second degree and, at trial in which defendant testified

the specific trait pertinent to the charge is sexual morality and decency. *State v. Blake,* 157 Conn. 99, 249 A.2d 232 (1968); *see State v. Schuman,* 89 Wash. 9, 153 P. 1084 (1915).

As a witness, defendant has no greater right than any other witness to have evidence of his truthful character presented to a jury. *See* 5 K. Tegland, Wash. Prac., *Evidence* § 230 (2d ed. 1982). Here, trial courts must be guided by ER 608, which provides in part that "evidence of truthful character is admissible *only* after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise." (Italics ours.) Unless an accused's character for truthfulness is a trait pertinent to the charge, *e.g.,* fraud, the defendant, as the accused, cannot present evidence of his good reputation for truthfulness. Only after he becomes a witness and his character for truthfulness has been attacked by reputation evidence or otherwise can he rebut with evidence of his good reputation for truthfulness.

An attack upon truthfulness by reputation evidence is readily identified. A more difficult problem for a trial court occurs when this character trait has been "otherwise" attacked. Wigmore presents the problem as follows:

> The question thus always arises, under this general rule, When is the witness' character *brought into question* by the opponent, so as to open the way to evidence of good character in denial? This must depend on the nature of the opponent's impeaching evidence. It may be a direct assault on the witness' character, in which case no doubt exists. But it may be evidence of a doubtful or ambiguous import—for example, of bias, of a prior self–contradiction, of an error of fact, and so on through the whole series of kinds of discrediting evidence. It is obvi-

---

the pistol fired accidentally, three character witnesses testified as to defendant's good reputation "for truth, veracity and peacefulness". *Styles,* 93 Wn.2d at 175. The court analyzed the issue as to scope of cross examination of these witnesses under the provisions of ER 404 and 405, not under ER 608. This was quite appropriate for the testimony of defendant's reputation for "peacefulness." We do not, however, view *Styles* as supportive of a practice to permit defense character witnesses to testify as to defendant's good reputation for truth and veracity under the aegis of ER 404.

ous that the theory of each of these kinds of evidence must be considered before it can be said whether it affects the witness' character. In the ensuing applications of the rule, therefore, the result will depend much on the respective theories of impeachment by contradiction (§1000 *supra*), by self–contradiction (§1017 *supra*), and by bias, interest, or corruption (§§943–969 *supra*).

4 J. Wigmore, *Evidence* § 1104, at 235 (rev. 1972).

Under the rules of evidence, therefore, defendant cannot present the evidence of the three character witnesses until his character has been attacked. Whether, on retrial, his character for truthfulness will have been attacked depends upon the manner in which the prosecution proceeds, but the decision to admit or refuse the testimony of defendant's proposed witnesses must be based on the foregoing analysis, not by the mere fact that the defendant testifies. His reputation for truthfulness, as with that of any witness, will be presumed "good" until it has been attacked.

Furthermore, once his character has been attacked and that attack has been rebutted by defendant's evidence as proposed herein, the prosecution's right to introduce evidence of these previous convictions appears to be prohibited by ER 608(b)(2). The previous convictions (instances of misconduct) are not instances concerning defendant's character for untruthfulness.

Finally, we consider defendant's proposal to attack the child victim's veracity by presenting evidence of her previous check forgeries, for which, however, she had never been charged or convicted. Here, again, the court must be guided by ER 608(b). Specific instances of the witness' misconduct may not be proved by extrinsic evidence. Nevertheless, the rule provides that specific instances of the witness' conduct may, however, in the discretion of the court, if probative of untruthfulness, be inquired into on cross examination of the witness concerning her character for untruthfulness. Evidence of previous forgeries attacks the witness' reputation for honesty; it does not attack her veracity. Accordingly, evidence of these previous acts of misconduct should

862

not be admitted.

It is unlikely, on retrial, that other alleged errors will recur, particularly the child victim's carrying a "Teddy Bear" onto the witness stand while testifying. Accordingly, we will not address these other issues.

Judgment reversed and this cause is remanded for retrial.

WORSWICK, A.C.J., and REED, J., concur.

Reconsideration denied November 4, 1983.

Review denied by Supreme Court January 6, 1984.