98 P.3d 809 (2004)
STATE of Washington, Respondent,
v.
Morteza HAKIMI, Appellant.
No. 51601-9-I.
Court of Appeals of Washington, Division 1.
July 26, 2004.
Publication Ordered September 17, 2004.
*810 Mark Mestel, Attorney at Law, Everett, WA, for Appellant.
Thomas M. Curtis, Snohomish County Pros. Office, Everett, WA, for Respondent.
APPELWICK, J.
Morteza Hakimi was convicted of three counts of first degree child molestation following a trial on charges that he had sexually molested two 7-year-old girls. On appeal, he argues that the trial court abused its discretion when it allowed the victims, 9 years old at the time of trial, to hold a doll while testifying. He also alleges ineffective assistance of counsel. We affirm.

FACTS
Morteza Hakimi, who babysat M.C. when she was 7 years old, was charged with three counts of first degree child rape of M.C. and with two counts of first degree child molestation of her 7-year-old friend, B.E.
At Hakimi's jury trial, the trial court permitted M.C. and B.E. to hold a doll while on the witness stand over defendant counsel's objections.
Following M.C.'s testimony, the State moved to amend Count III from rape of a child to child molestation. Hakimi's counsel stated that he had no objection to the amendment because it was "simply to conform with the evidence as it has come in from that particular witness that charges I, II, and III are aimed at or directed to." Prior to the State's proposed amendment, Hakimi's counsel had received a copy of the Amended Information and had discussed it with Hakimi, who waived a formal reading of it, and continued to plead not guilty.
*811 Following B.E.'s testimony, the State introduced B.E.'s mother as a witness. B.E.'s mother testified that B.E. was highly reluctant to testify. Hakimi's counsel did not object.
Hakimi was convicted of three counts of first degree child molestation pursuant to RCW 9A.44.083.[1] He argues on appeal that the trial court abused its discretion when it allowed M.C. and B.E. to hold a doll while testifying. He also alleges ineffective assistance of counsel.

ANALYSIS

I. The Doll
Hakimi alleges that the trial court abused its discretion and denied him his right to a fair trial when it allowed M.C. and B.E. to hold a doll while on the witness stand.
It is well settled in Washington that the trial court has broad discretion "to conduct [a] trial with dignity, decorum and dispatch and [to enable it to] maintain impartiality." State v. Johnson, 77 Wash.2d 423, 426, 462 P.2d 933 (1969). ER 611(a) governs the trial court's authority over witnesses, and provides:
The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
The standard of review for alleged violations of ER 611 is manifest abuse of discretion. See State v. McDaniel, 83 Wash.App. 179, 185, 920 P.2d 1218 (1996). Discretion is abused by the trial court when its decisions are manifestly unreasonable, based on untenable grounds, or made for untenable reasons. State ex. rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
Prior to jury trial, M.C. and B.E. were interviewed by Kelly Bradley, a child interview specialist. Bradley testified at trial that she did not recall that either M.C. or B.E. had a doll with them during their interviews with her. However, later M.C. and B.E. held a doll while testifying at their child hearsay hearings. Hakimi's counsel objected to M.C. and B.E. being allowed to testify in front of the jury while holding a doll.
The trial court denied defense counsel's motion to prohibit M.C. and B.E. from carrying the doll to the witness stand, stating:
I'm going to allow at least [B.E.] to have the doll with her; and to the extent [M.C.] brings the doll in, that will be allowed.
But the doll will not be the subject of any questioning, at least in terms of the State's case in chief. To the extent [Hakimi's counsel] wants to inquire and get into that issue, then that would be another matter. It seems to me, children do present different issues and different considerations in terms of being witnesses in different cases. They have a peculiar need to find some security in an otherwise insecure setting, I suspect.
I don't think the doll unduly prejudices, to the extent it prejudices anyone at all; so I will allow it.
Hakimi argues that under State v. Harper, 35 Wash.App. 855, 670 P.2d 296 (1983), the trial court abused its discretion by permitting B.E. and M.C. to carry a doll to the witness stand. Harper is distinguishable.
Harper was convicted of indecent liberties for having sexually contacted his 11-year-old stepdaughter. Harper, 35 Wash.App. at 855, 670 P.2d 296. The Court of Appeals, Division III found a caseworker's testimony to be highly prejudicial and reversed and remanded the case to the trial court. Harper, 35 Wash.App. at 858, 670 P.2d 296. Having arrived at its decision, the court stated:
It is unlikely, on retrial, that other alleged errors will recur, particularly the child victim's carrying a "Teddy Bear" onto the witness stand while testifying. Accordingly, we will not address these other issues.
Harper, 35 Wash.App. at 862, 670 P.2d 296. While the court was clearly concerned about a child over the age of 11 holding a teddy *812 bear while on the witness stand, this statement was dictum. We do not interpret it as indicating that as a matter of law, a 9-year-old child witness may not hold a doll while testifying.
Hakimi argues on appeal, as he did at trial, that because the girls did not hold a doll while being interviewed by Bradley, allowing them to hold one while testifying at trial was impermissible. Bradley's interviews presented an entirely different environment than a courtroom, however. Testifying as to a defendant's sexual acts in his presence and in the presence of a jury and other individuals in the courtroom must surely have been more difficult for both M.C. and B.E. than privately answering Bradley's questions.
Hakimi also suggests that the doll as provided by the prosecutor's office was a strategy to "engender sympathy and empathy in the jury." The record states, however, that the doll belonged to B.E., who gave it to M.C. for the duration of her testimony. Hakimi provides no other evidence to suggest that M.C. and B.E. did not hold the doll to help them endure the ordeal of testifying, in the presence of Hakimi, as to his sexual conduct. The record shows that B.E. in particular was highly reluctant to testify against Hakimi. The trial court also had before it testimony by Bradley, an expert in child interviewing, that girls in particular in the 9-year-old age range may find security and comfort by holding a toy while answering questions posed to them during examination at trial. The trial court heard argument by both defense counsel and the State prior to permitting M.C. and B.E. to carry a doll to the witness stand. The record thus shows that the trial judge weighed the interests of Hakimi's two victims and any potential prejudice to Hakimi in allowing the girls to testify while holding a doll.
Hakimi also argues that State v. Gevrez, 61 Ariz. 296, 306, 148 P.2d 829 (1944), supports his claim that the trial court erred by permitting M.C. and B.E. to hold a doll while testifying. Gevrez differs factually and is inapposite. In Gevrez, the appellate court concluded that the trial court abused its discretion because the doll held by the witness belonged to witness's mother, who was the victim of the homicide for which the defendant was being tried. Gevrez, 61 Ariz. at 306, 148 P.2d 829.
Viewed in totality, the circumstances in this case lead us to conclude that the trial court did not abuse its discretion in permitting M.C. and B.E. to hold a doll while testifying.

II. Ineffective Assistance of Counsel
Hakimi argues that his conviction should be reversed and the case remanded for retrial because he did not receive effective assistance of counsel.
The Sixth Amendment of the federal constitution and article I, section 22 of the Washington State Constitution guarantee effective assistance of counsel. On appeal, we consider counsels performance in light of the entire record and presume that it was within the broad range of reasonable professional assistance. State v. Osborne, 102 Wash.2d 87, 99, 684 P.2d 683 (1984).
To establish ineffective assistance of counsel, a defendant must first show that his attorneys performance was deficient, and second that the deficiency prejudiced the defense. State v. Thomas, 109 Wash.2d 222, 226, 743 P.2d 816 (1987) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The first prong is met by showing that defense counsels performance was not reasonably effective under prevailing professional norms guaranteed the defendant by the Sixth Amendment. State v. Glenn, 86 Wash.App. 40, 45, 935 P.2d 679 (1997). The second prong is met by showing that there is a probability that but for counsels errors, the result would have been different. Glenn, 86 Wash.App. at 44, 935 P.2d 679. The defendant must also show that there were no legitimate strategic or tactical rationales for the challenged attorney conduct. State v. McFarland, 127 Wash.2d 322, 336, 899 P.2d 1251 (1995).
Hakimi asserts that his attorney failed to provide him with effective assistance of counsel when he failed to object to the State's "impermissible bolstering and vouching of the State's witnesses." Hakimi contends *813 that on three occasions at trial the State "impermissibly enhance[ed]" B.E.'s credibility. He refers (1) to the State's supplying M.C. and B.E. with a doll for testimony; (2) to testimony by B.E.'s mother following B.E.'s testimony; and (3) to statements by the prosecutor during the State's closing argument. Hakimi also asserts that counsel's failure to object to the State's motion to amend Count III from rape of a child to child molestation constituted ineffective assistance of counsel.
Hakimi requests an evidentiary hearing pursuant to RAP 9.11 "[b]ecause the record is silent as to why trial counsel failed to object" to the State's amendment of charges, bolstering, and vouching.
RAP 9.11(a) allows this court to consider additional evidence on the merits if:
(1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.
Hakimi does not demonstrate how any of the requirements of RAP 9.11(a) are satisfied. The record before us is sufficient to resolve the issue of whether his trial counsel was ineffective. Accordingly, we deny Hakimi's request for an evidentiary hearing.
Turning to the specific challenges, first, the doll held by M.C. and B.E. on the witness stand was not furnished by the prosecutor's office. The doll belonged to B.E., who lent it to M.C. Hakimi's counsel objected to M.C. and B.E. holding the doll during their testimony. Hakimi appears to argue on appeal that his counsel was ineffective because it did not voice more strenuous objections. The record does not support Hakimi's contention. Because the trial court did not err in permitting M.C. and B.E. to hold a doll during their testimony at trial, Hakimi cannot show that defense counsel's failure to raise further objections to M.C. and B.E. holding the doll while testifying prejudiced him in any way.
Secondly, Hakimi also contends that his counsel's failure to object to testimony by B.E.'s mother constitutes ineffective assistance of counsel.
After B.E. completed her testimony, the State introduced B.E.'s mother as a witness. Hakimi's counsel did not object. Hakimi maintains on appeal that corroborating testimony by B.E.'s mother was improper bolstering because it was offered before B.E.'s credibility had been attacked. Hakimi refers to the following testimony:
[State]: Did you discuss testifying with [B.E.]?
[B.E.'s mother]: Yes.
[State]: What did she say?
[B.E.'s mother]: I told her it was important. She had said she wasn't going to testify.
On cross-examination, B.E.'s mother told Hakimi's counsel of B.E.: "She's very reluctant; she doesn't want to discuss it."
The rule at common law is that "in the absence of an attack upon credibility[,] no sustaining evidence is allowed." State v. Bourgeois, 133 Wash.2d 389, 400, 945 P.2d 1120 (1997) (quoting 1 McCormick on Evidence § 47, at 172 (John W. Strong ed., 4th ed.1992)). Thus, as stated in State v. Petrich, 101 Wash.2d 566, 574, 683 P.2d 173 (1984), "corroborating testimony intended to rehabilitate a witness is not admissible unless the witness's credibility has been attacked by the opposing party." Petrich, 101 Wash.2d at 574, 683 P.2d 173 (citing State v. Froehlich, 96 Wash.2d 301, 635 P.2d 127 (1981)). Petrich also states, however, that where credibility of a witness may be "an inevitable, central issue," corroborating evidence may be offered.[2]Petrich, 101 Wash.2d at 575, *814 683 P.2d 173. Petrich further acknowledged that credibility of a witness often is "an inevitable, central issue" in cases in which the witness is a child victim of sexual molestation:
Cases involving crimes against children generally put in issue the credibility of the complaining witness, especially if the defendant denies the acts charged and the child asserts their commission. An attack on the credibility of these witnesses, however slight, may justify corroborating evidence.
Petrich, 101 Wash.2d at 575, 683 P.2d 173.
Bourgeois is analogous. In Bourgeois, a defendant convicted of first degree murder and first degree assault argued on appeal that the trial court had abused its discretion by allowing in a witness's testimony about his reluctance to testify prior to defense counsel's attack on his credibility. Bourgeois, 133 Wash.2d at 402, 945 P.2d 1120. The Washington Supreme Court disagreed, and held that the trial court had not abused its discretion in allowing the testimony supporting the witness's credibility prior to cross-examination by defense counsel because "it was reasonable for the State to anticipate the attack and `pull the sting' of the defense's cross-examination." Bourgeois, 133 Wash.2d at 402, 945 P.2d 1120.
In this case, Hakimi denied the crimes charged, and, as in the majority of child molestation cases, there were no witnesses to his crimes other than the victim. M.C.'s and B.E.'s credibility was thus an inevitable, central issue. Hakimi himself acknowledged this in his brief when he stated that "[u]ltimately the jury had to decide whether to believe the accused or his accusers." Since Hakimi's victims' credibility was an "inevitable, central issue", the State thus could anticipate that Hakimi's defense counsel would attack B.E.'s credibility. Under Bourgeois, the trial court did not err in admitting testimony by B.E.'s mother following B.E.'s testimony because B.E.'s credibility was an inevitable, central issue.
Third, Hakimi contends that he was denied effective assistance of counsel when his attorney failed to object to the prosecutor's impermissible statement of his own opinion during closing argument. Hakimi refers to the following statement made by the prosecutor during closing:
Lord knows, this case never would have come to your attention if it had just been [B.E.]. She was way too embarrassed to say anything about it. On December 12, when [M.C. and her family] came over to [the] house, she was faced with an ugly choice, which is to tell the truth about what happened and thereby possibly end up on this witness stand  which is, in fact, what happened  or lie about it and say it didn't happen and thereby avoid having to testify, but, of course, telling a lie.
"Prosecutors are given reasonable latitude to draw, and express, inferences and deductions from the evidence, including inferences as to the credibility of witnesses." State v. Munguia, 107 Wash.App. 328, 337, 26 P.3d 1017 (2001) (citing State v. Knapp, 14 Wash.App. 101, 111, 540 P.2d 898 (1975)). The prosecutor's statement was not impermissible personal opinion, but rather, argued inferences about B.E.'s credibility as a witness. Hakimi's counsel's failure to object does not demonstrate ineffective assistance.
Finally, Hakimi also asserts that his counsel's failure to object to the State's motion to amend Count III from rape of a child to child molestation constituted ineffective assistance of counsel.
CrR 2.1(d) governs amendments to charges, and states that "[t]he court may permit any information ... to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." Hakimi has the burden of showing prejudice under former CrR 2.1(e).[3]State v. *815 Gosser, 33 Wash.App. 428, 435, 656 P.2d 514 (1982). The Court reviews the trial court's decision to allow an amendment of charges for abuse of discretion. State v. Haner, 95 Wash.2d 858, 864, 631 P.2d 381 (1981).
At trial, M.C. testified that Hakimi had put his finger down her underpants and moved it around on between five and eight occasions, and also that he had put his mouth on her breast. Following M.C.'s testimony, the State moved to amend Count III from rape of a child to child molestation.[4] Hakimi's counsel stated that he had no objection to the amendment because it was "simply to conform with the evidence as it has come in from that particular witness that charges I, II, and III are aimed at or directed to." Prior to the State's proposed amendment, Hakimi's counsel had received a copy of the Amended Information and had discussed it with Hakimi, who waived a formal reading of it and continued to plead not guilty.
Hakimi maintains that this case is controlled by State v. Pelkey, 109 Wash.2d 484, 745 P.2d 854 (1987), under which the State's amendment during trial prejudiced him.
As stated in Pelkey, former CrR 2.1(e) "necessarily operates within the confines of article l, section 22."[5]Pelkey, 109 Wash.2d at 490, 745 P.2d 854. Thus, former CrR 2.1(e) is intended to fulfill the state constitution's notice provision by allowing a defendant the opportunity to adequately defend him or herself. Pelkey held that former CrR 2.1(e) must be interpreted to mean that "[a] criminal charge may not be amended after the State has rested its case in chief unless the amendment is to a lesser degree of the same charge or a lesser included offense." Pelkey, 109 Wash.2d at 491, 745 P.2d 854. In State v. Schaffer, 120 Wash.2d 616, 845 P.2d 281 (1993), the Supreme Court declined to expand the reach of Pelkey's per se rule to encompass amendments during the State's case in chief. See also, State v. Wilson, 56 Wash.App. 63, 65, 782 P.2d 224 (1989) (affirming trial court's grant of State's motion to add a third count of indecent liberties on the day of trial). Because the State amended charges against Hakimi before it rested, Pelkey's per se rule is inapplicable.
The State's amendment in this case did not jeopardize Hakimi's ability to defend himself. The State did not allege an additional count; its amendment reduced one count. The reduced charge arose out of the same factual scenario on which the original charge had been brought. Moreover, Hakimi was informed of the State's proposed amendment prior to the State's motion before the court. Hakimi fails to show that his substantial rights were prejudiced by the State's amendment during trial.
Because Hakimi has not shown that his substantial rights were prejudiced by the State's amendment during trial, his counsel's failure to object to the State's amendment does not constitute ineffective assistance of counsel.
Affirmed.
GROSSE and KENNEDY, JJ., concur.
NOTES
[1] The jury failed to convict Hakimi of two counts of first degree rape.
[2] In Petrich, the defendant's granddaughter, who was 13 years old at the time the defendant sexually abused her, testified she had waited eight months to report the abuse. Petrich, 101 Wash.2d at 575, 683 P.2d 173. "On cross-examination, defense counsel probed several incidents which occurred during the delay period which reflected both opportunity and lack of motive to report any abuse." Petrich, 101 Wash.2d at 575, 683 P.2d 173. At trial, the jury also heard an expert witness describe the delayed reporting patterns of sexually abused children. Petrich, 101 Wash.2d at 573, 683 P.2d 173. On appeal the defendant argued that the expert's testimony improperly bolstered the witness's credibility, which had not been attacked. Petrich, 101 Wash.2d at 573, 683 P.2d 173.
[3] Former CrR 2.1(e) (1994), amended as CrR 2.1(d).
[4] At trial, the prosecutor commented:

It became obvious during my direct examination that the evidence was different than what I anticipated it was going to be.
The misunderstanding may very well be mine, in the pretrial interview. This is one of the difficulties with using the term "private spot" as opposed to "breasts" and "vagina," because "private spot" can mean a[sic] different things.
As I look at the statute and the definition of sexual intercourse, the particular definition that I was relying on for Count III speaks about mouth to sex organ contact. I looked at that last night, and I tried to see any authority  I don't believe that the breasts can be considered a sex organ. I think that refers to one's genitalia. As such, the charge, as I outlined it for the jury in opening statement, isn't accurate.
So, instead, what I want to do is then change that to first-degree child molestation. There's no prejudice to the defendant. In fact, of course, it's actually a lesser charge; it's not adding any additional charges to him at this point, and it's not based on any conduct that [defendant's counsel] didn't know about.
[5] Article I, section 22 of the Washington State Constitution guarantees criminal defendants "shall have the right ... to demand the nature and cause of the accusation against [them]." Wash. Const. art. I, section 22.