IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

    Respondent,

v.

DANNY C. PARK,

    Appellant.

No. 72262-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 16, 2015

BECKER, J. — Appellant's right to a fair trial was not violated when the trial court allowed the child victim to testify holding her mother's driver's license. And the prosecutor's closing arguments did not misstate the law or express a personal opinion. We affirm the conviction.

A jury found appellant Danny Park guilty of one count of luring a minor with sexual motivation. This appeal followed.

Child witness

The trial court allowed the 10-year-old child witness to hold her mother's driver's license while testifying before the jury. Park contends this was a violation of his due process right to a fair trial. A trial court has "broad discretion to make a variety of trial management decisions." State v. Dye, 178 Wn.2d 541, 547, 309 P.3d 1192 (2013). This broad discretion includes "control over the mode and

order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) prevent witnesses from harassment or undue embarrassment." ER 611(a). We review for abuse of discretion. Dye, 178 Wn.2d at 547-48.

In State v. Hakimi, 124 Wn. App. 15, 98 P.3d 809 (2004), review denied, 154 Wn.2d 1004 (2005), this court found that the trial court did not abuse its discretion in allowing two child victims to hold a doll while testifying. In Dye, the Washington Supreme Court held that the trial court acted within its broad discretion in allowing a severely developmentally disabled man, who functioned at the mental capacity of a child, to testify with a facility dog provided by the prosecutor's office. Dye, 178 Wn.2d 541.

Here, when first attempting to testify at trial, the child became upset, started to cry, and was unable to continue testifying. The judge conducted an off-the-record sidebar with both parties and then allowed her to testify while holding her mother's driver's license. The judge later described this sidebar discussion for the record: "We discussed the fact that I believe it was the Supreme Court had indicated that a dog is not inappropriate if the dog serves to comfort a vulnerable witness, and the court indicated that that card was the equivalent of the dog and that it was helping the witness to calm down and to provide her with reassurances and justice. With a dog situation, the court didn't feel that the card crossed the line in the sense that it would unduly inflame the passions of the jury."

Park argues that the trial court failed to balance the child's needs with the risk of prejudice to him before allowing her to testify holding her mother's driver's license. In Dye, the trial judge reasoned that the victim was a "'developmentally disabled individual who has . . . significant emotional trauma'" and that the dog would be "'very unobtrusive, will just simply be next to the individual, not be laying [sic] in his lap, and if we can accommodate somebody who has a developmental disability when they're testifying in the courtroom I think it's appropriate to do so.'" Dye, 178 Wn.2d at 546 (alterations in original). This was an appropriate balancing of competing interests. Dye, 178 Wn.2d at 557 ("the trial court balanced the competing factors appropriately"). In Hakimi, this court approved the trial judge's reasoning that "'children do present different issues and different considerations in terms of being witnesses in different cases. They have a peculiar need to find some security in an otherwise insecure setting, I suspect. I don't think the doll unduly prejudices, to the extent it prejudices anyone at all; so I will allow it.'" Hakimi, 124 Wn. App. at 20-21. The trial judge's balancing of competing interests in this case was very similar to the balancing approved in Dye and Hakimi. Thus, the balancing was proper.

Park also argues that the trial court failed to take sufficient measures to reduce the risk of prejudice to him. The child was briefly questioned regarding the driver's license at the beginning of her testimony. There is no evidence in the record that the driver's license was brought to the attention of the jury again. It is "the responsibility of a party alleging error to create a record of that error. . . . This court is not in a position to speculate about what *might* have happened at

trial." Dye, 178 Wn.2d at 556. We conclude that the trial court properly minimized jury exposure to the license.

Park suggests that a limiting jury instruction should have been given as a safeguard against potential prejudice. In Dye, the trial court instructed the jury not to "'make any assumptions or draw any conclusions based on the presence of this service dog.'" Dye, 178 Wn.2d at 556. However, Dye did not hold that a limiting jury instruction was required, nor did its decision hinge on the fact that such an instruction was given. The comfort item in this case—a small plastic driver's license—was inherently less prejudicial than the "adorable" golden retriever in Dye. Dye, 178 Wn.2d at 559 (Gordon McCloud, J., concurring). In Hakimi, although the trial court did not give the jury a limiting instruction, this court upheld the decision to allow the child victims to testify holding a doll.

Holding her mother's driver's license calmed the child and allowed her to testify, which enhanced the truth-seeking goal of the trial and permitted the trial to move forward. The trial court considered potential prejudice to Park and properly minimized it. We find no abuse of discretion.

Prosecutor's closing argument

Park contends the prosecutor committed misconduct in closing argument. An appellant claiming prosecutorial misconduct must establish both improper conduct and resulting prejudice. State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Prejudice exists only where there is a substantial likelihood that the misconduct affected the jury's verdict. State v. Pirtle, 127 Wn.2d 628, 672, 904 P.2d 245 (1995), cert. denied, 518 U.S. 1026 (1996). We review a prosecutor's

arguments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994), cert. denied, 514 U.S. 1129 (1995). Failure to object to alleged prosecutorial misconduct at trial waives any error unless the misconduct is so flagrant and ill-intentioned that no instruction could have cured the prejudice. State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

The prosecutor told the jury, "I do not need to prove to you beyond a reasonable doubt . . . whether Mr. Park did this act knowingly or with intent, which is a different type of crime." Park claims that these remarks misstated the law regarding the mental state required for a luring conviction.

A person commits the crime of luring if he "orders, lures, or attempts to lure a minor" into or away from specified areas. RCW 9A.40.090(1)(a). The plain language of the statute does not include any intent or specific mens rea. Our courts have already held that the luring offense does not require proof of intent. See State v. Homan, 181 Wn.2d 102, 107, 330 P.3d 182 (2014) ("RCW 9A.40.090 does not require proof of unlawful purpose or intent."); State v. Dana, 84 Wn. App. 166, 177, 926 P.2d 344 (1996) ("there is no intent element to luring."), review denied, 133 Wn.2d 1021 (1997). The legislative history of the luring statute also indicates that luring is a strict liability crime. Dana, 84 Wn. App. at 166 n.28.

Park was convicted under the "attempts to lure" language of the statute. He argues that "attempt" requires an intentional or goal-oriented mindset.

Where the word "attempt" in the statute has nothing to do with criminal attempt, it must be given its ordinary meaning of "to try." State v. Gallegos, 73 Wn. App. 644, 650, 871 P.2d 621 (1994). *Black's Law Dictionary* defines attempt as the "act or an instance of making an effort to accomplish something, esp. without success." BLACK'S LAW DICTIONARY 152 (10th ed. 2014). This definition does not require an intentional or knowing mental state. Rather, it refers to the "act" or "instance" of trying. Because the luring statute does not require the State to prove that one who "attempts to lure" has any specific mens rea, the prosecutor did not misstate the law.

Park also claims that the prosecutor argued his personal opinion. In closing, the defense argued that this "is not a luring case." In rebuttal, the prosecutor stated that it "sounds like a luring case to me."

> To simply say that this is not a luring case, you maybe ask the next question which is sort of what is that based upon. Why would we say this is a luring case? Right. You sort of have to ask yourself the next question. Well, if I remember the evidence and the testimony, I'm sure there was discussion of beer and cigarettes from Lucas Schmidt who we also know directly from [E.H.] that there was mention of cigarettes and candy.
> What else do we know? We also know that this man asked that little fourth-grader if she would have sex with him. And where would this take place? He asked her to go back to his place, to his house as described by [E.H.]. It sounds like a luring case to me.

Misconduct occurs when the prosecutor expresses an "independent, personal opinion" regarding defendant's guilt. McKenzie, 157 Wn.2d at 53. But this must be distinguished from an opinion based upon or inferred from the evidence in the case. McKenzie, 157 Wn.2d at 53. Prejudicial error does not occur until it is clear and unmistakable that the prosecutor is expressing a

personal opinion rather than arguing an inference from the evidence.  McKenzie, 157 Wn.2d at 54.

In this case, the prosecutor was directly responding to the defense's closing argument that "this is not a luring case."  The prosecutor's question, "Why would we say this is a luring case?" and conclusion that it "sounds like a luring case to me" was a rhetorical reply, not a personal opinion.  The prosecutor referred to testimony from two witnesses about what Park said to the victim.  The prosecutor then argued that *based on this testimony* it was, in fact, a luring case.  This was a direct inference from the testimony just mentioned, not an independent personal opinion divorced from the evidence in the record.

Even assuming that the prosecutor's remarks constituted misconduct, defense counsel failed to object.  Any error was waived unless the misconduct was so flagrant and ill-intentioned that no instruction could have cured the prejudice.  Emery, 174 Wn.2d at 760-61.  The prosecutor's alleged misconduct in this case does not meet that test.  Park waived any error when he failed to object.

Sexual assault protection order

The trial court entered a sexual assault protection order with a duration of three years.  By statute, a sexual assault protection order entered pursuant to a criminal conviction may remain in effect for a period of two years.  RCW 7.90.150.  Park argues, and the State concedes, that the three-year order exceeded the court's authority.  We accept the concession.

Park's conviction is affirmed.  The case is remanded for correction of the expiration date on the sexual assault protection order.

Becker, J.

WE CONCUR:

Trickey, J

Schindler, J