# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Appellant,

v.

OSCAR RAUL LOPEZ,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 74333-3-I

UNPUBLISHED OPINION

FILED: March 20, 2017

DWYER, J. — The State of Washington appeals from an order granting Oscar Lopez's motion for a new trial. The State contends that the trial court erred by ruling that Lopez's counsel acted ineffectively by not calling witnesses to testify as to Lopez's good reputation for sexual morality in the community. The State also contends that the trial court erred by ruling that there exists an independent due process right to representation by an attorney who does not suffer from mental illness, here severe depression.

Pursuant to the United States Supreme Court's decision in <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an attorney provides constitutionally ineffective assistance when the lawyer commits errors so serious that the lawyer no longer functions as the "counsel" guaranteed by the Sixth Amendment and when, as a result, this deficient performance prejudices the defense, depriving the defendant of a fair trial. Here, defense

counsel's performance was not deficient nor did it deprive Lopez of a fundamentally fair trial. Furthermore, there is no independent due process right to counsel free from mental illness.

The trial court erred by granting Lopez a new trial. Accordingly we reverse.

I

Lopez worked for several years at Bethel Christian Center Day Care as a bus driver and maintenance worker. As a bus driver, he was responsible for driving children to several local schools in the morning and returning them to the day care in the afternoon. One of the students in his care was L.M., age six.

L.M. had recently lost her father. Her mother worked long shifts, leaving L.M. at the day care for many hours each day. Due to the bus schedule, L.M. would sometimes be the only child on the bus with Lopez.

On June 6, 2014, L.M. told her mother that Lopez had touched her "butt" the previous day. L.M. elaborated that Lopez had put his hand inside her shorts and "all the way into my butt and then he started like . . . itching it." Although L.M. lacked mature notions of anatomy, further questioning revealed that Lopez "itched" or rubbed L.M.'s vaginal area.

L.M.'s mother reported the incident to the police and the day care center. Lopez was subsequently charged with one count of child molestation in the first degree and, after a jury trial, convicted.

Following his trial and conviction, Lopez dismissed his trial attorney and, after obtaining new counsel, filed a motion to set aside the verdict and for a new

trial. He argued that his trial counsel, Steven Witchley, had provided constitutionally ineffective assistance by failing to sufficiently investigate the case, present evidence of Lopez's reputation for sexual morality, and communicate plea offers. Lopez also claimed that a new trial was warranted because Witchley was suffering from severe depression during the trial, which compromised his efforts in defending the case.

During the posttrial motion hearing, Lopez argued that, while his trial was ongoing, Witchley was being investigated by the Washington State Bar Association Disciplinary Board concerning allegations that Witchley had violated client trust fund rules and rendered ineffective assistance of counsel (in matters unrelated to Lopez's case).[1] The trial court received a declaration from Karen Sanderson, Witchley's longtime investigator, concerning his behavior during Lopez's trial. She stated that, while working on Lopez's trial, Witchley was depressed and had confided in her that he was struggling due to the disciplinary investigation and financial problems. The trial court also received a declaration from Witchley's therapist stating that although Witchley could work very productively in a focused area, he had struggled over the past year due to the many demands of managing a full time law practice combined with the stress of the disciplinary investigation.

At the conclusion of the motion hearing, the trial court granted Lopez's motion to set aside the verdict and ordered a new trial. The trial court rejected

---

[1] After Lopez's trial, Witchley ultimately resigned from the Bar Association in lieu of disbarment.

the claims that Witchley's investigations were insufficient or that he failed to properly communicate plea offers. However, the trial court did find that Witchley's assistance was ineffective due to his failure to call witnesses who would have testified as to Lopez's reputation for sexual morality in the community.

The trial court also found that Witchley rendered ineffective assistance of counsel due to his depression, holding that this constituted an alternative and independent basis upon which to grant a new trial. As a matter of due process, the court ruled, Lopez was entitled to be represented by an attorney free of mental illness.

## II

The State contends that the trial court erred by granting Lopez a new trial based on defense counsel's failure to present evidence of Lopez's reputation for sexual morality in the community. We agree.

The grant or denial of a new trial is a matter within the trial court's discretion. State v. Jackman, 113 Wn.2d 772, 777, 783 P.2d 580 (1989). A trial court abuses its discretion when its discretion is exercised on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Ineffective assistance of counsel claims are analyzed under the two part test articulated in Strickland. A defendant must establish that (1) counsel's representation was deficient, meaning it fell below an objective standard of reasonableness based upon consideration of all the circumstances and (2) the

- 4 -

defendant was prejudiced, meaning that the ineffectiveness was so egregious that it "undermined the proper functioning of the adversarial process," such that "the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Failure to establish either prong of the test is fatal to the claim of ineffective assistance of counsel. Strickland, 466 U.S. at 697.

A

A reviewing court, in analyzing the reasonableness of counsel's performance, must resist the "natural tendency to speculate as to whether a different trial strategy might have been more successful." Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). There are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689. A court should not look for "perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 8, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) (citing Bell v. Cone, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)).

Under the first prong of the Strickland test, America's highest court has held that counsel is not required to predict a change in the law that might be favorable to his client. Maryland v. Kulbicki, __ U.S. __, 136 S. Ct. 2, 4, 193 L. Ed. 2d 1 (2015) (counsel was not required to anticipate that certain ballistic evidence relied on by the prosecutor would years later be deemed inadmissible by an appellate court); accord In re Det. of Coe, 175 Wn.2d 482, 491, 286 P.3d 29 (2012) (counsel was not ineffective by

declining to request a jury instruction that then-current legal authority stated was unnecessary); State v. Brown, 159 Wn. App. 366, 371-72, 245 P.3d 776 (2011) (counsel has no duty to pursue novel legal theories, no duty to pursue strategies that appear unlikely to succeed, and no duty to anticipate changes in the law); State v. Slighte, 157 Wn. App. 618, 624, 238 P.3d 83 (2010) ("[S]ufficient performance by counsel does not require anticipating changes in the law."). Furthermore, counsel is not required to call all possible witnesses. In re Pers. Restraint of Benn, 134 Wn.2d 868, 900, 952 P.2d 116 (1998).

Thirty years ago, we held that evidence of a defendant's good reputation for sexual morality is not admissible in cases involving sexual offenses against children. State v. Jackson, 46 Wn. App. 360, 365, 730 P.2d 1361 (1986). Rejecting the notion that such evidence was proper in a case involving illegal sex with a child, we explained:

> We doubt the validity of this assertion. The crimes of indecent liberties and incest concern sexual activity, which is normally an intimate, private affair not known to the community. One's reputation for sexual activity, or lack thereof, may have no correlation to one's actual sexual conduct. Simply put, one's reputation for moral decency is not pertinent to whether one has committed indecent liberties or incest. The trial court properly refused to permit Jackson's witnesses to testify concerning his reputation for sexual morality and decency.

Jackson, 46 Wn. App. at 365.

The trial herein took place in King County. Thus, this court's decision was directly applicable.

Lopez's claim is based upon his belief—adopted by the trial court posttrial—that Jackson was wrongly decided. Such a belief, however, is entirely irrelevant when evaluating whether an attorney provided constitutionally effective representation.

The Washington Supreme Court has never overruled or disavowed the Jackson decision. In over three decades, no panel of Division One judges has ever declined to follow it. Nevertheless, in finding Witchley's representation constitutionally deficient, the trial judge noted that opinions from other appellate divisions treated the issue differently. See State v. Griswold, 98 Wn. App. 817, 828-29, 991 P.2d 657 (2000) (Division Three—characterizing Harper's discussion as dicta but choosing to follow it); State v. Harper, 35 Wn. App. 855, 859, 670 P.2d 296 (1983) (Division Two—allowing for such evidence in an opinion criticized by the Jackson court, 46 Wn. App. at 365). The trial court also cited to State v. Thomas, 110 Wn.2d 859, 757 P.2d 512 (1988). In that rape in the third degree prosecution, evidence of the defendant's reputation for being "sexually moral" was admitted. Thomas, 110 Wn.2d at 863. However, the appellate challenge at issue was not to the admission of this evidence but, rather, to the absence of a jury instruction informing the jury of how to properly consider the evidence. Thomas, 110 Wn.2d at 864. The Thomas opinion not only did not overrule Jackson, it did not even mention it.

Nevertheless, based on the Thomas, Griswold, and Harper opinions, in finding Witchley's representation to have been below accepted professional standards, the trial judge stated that had Witchley made a compelling argument,

the judge would likely have admitted such "sexual morality" evidence, notwithstanding the holding in <u>Jackson</u>. This musing by the trial judge is entirely irrelevant to an evaluation of counsel's performance.[2]

While it may be so that an excellent attorney could have made a persuasive argument for the admission of the contested evidence, such advocacy is far beyond the level of competency guaranteed by the constitution. Witchley followed the applicable case law of this division and had no duty to go "'looking for a needle in a haystack,'" when there was "'reason to doubt there is any needle there.'" <u>Kulbicki</u>, 136 S. Ct. at 4 (quoting <u>Rompilla v. Beard</u>, 545 U.S. 374, 389, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005)). Overwhelming legal authority holds that it is not constitutionally ineffective to litigate in accordance with existing law. In order to provide constitutionally effective assistance of counsel, Witchley was not required to cobble together a theory of admissibility that was contradicted by existing, applicable appellate case law. Indeed, a lawyer who follows the law can hardly be deemed to have ceased to function as the "counsel" referenced in the Sixth Amendment. <u>See Kulbicki</u>, 136 S. Ct. at 2.

Moreover, while Witchley did not have a duty to call such reputation witnesses, the standard for reasonable performance considers counsel's entire performance and not merely a single act or omission. <u>Strickland</u>, 466 U.S. at 687-88. A reviewing court must evaluate whether, when taken as a whole, trial

---

[2] Perhaps pertinent to the trial court's comment that it might not have followed the directly controlling decision in <u>Jackson</u> is this observation from the Supreme Court: a defendant "has no entitlement to the luck of a lawless decisionmaker." <u>Strickland</u>, 466 U.S. at 695.

counsel's performance fell below an *objective* standard of reasonableness. Strickland, 466 U.S. at 687-88.

The trial court cited Witchley's failure to call reputation witnesses as the sole basis for declaring his representation constitutionally ineffective. In fact, while Lopez also claimed that Witchley was ineffective for not properly communicating plea agreements and failing to properly investigate, the trial court explicitly rejected these assertions. Furthermore, the trial court complimented Witchley's overall performance on multiple occasions, stating that "Mr. Witchley, despite his tardiness, for the most part did a good job." It further stated that Witchley was a "very able trial attorney," and was "a competent trial attorney for the most part, except for the evidentiary issues."

Review of the record shows that Witchley, in spite of his personal struggles, did do a good job; he handled the case deftly and elicited testimony fairly equivalent to the contested reputation evidence (as more thoroughly set forth below). He delicately examined L.M.—who proved to be a difficult witness—displaying a level of tact and skill that eventually led L.M. to make some admissions, in spite of her initial refusal to answer most questions. He also aggressively litigated pretrial motions and evidentiary issues that arose during trial. Taken as a whole, Witchley's performance did not fall below an objective standard of reasonableness. The trial court erred in ruling otherwise.

B

Under the second prong of the Strickland test, a defendant must show that counsel's ineffectiveness "undermined the proper functioning of the adversarial

process," such that "the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). A reviewing court must assume that the decision-maker was "reasonably, conscientiously, and impartially applying the standards that govern the decision." Strickland, 466 U.S. at 695.

The record discloses that the missing sexual morality testimony would not have greatly augmented the evidence actually provided to the jury. Several witnesses testified at trial to the effect that Lopez was trusted, respected, and well-liked by his family, the day care employees, and the parents of the children. Implicit in all of this testimony was that the witnesses did not believe Lopez to be the type of person who would molest a child; were this otherwise, he would not have enjoyed the level of trust testified to.

Thus, even had testimony as to Lopez's reputation for sexual morality been offered, it is unlikely that such testimony would have changed the outcome of Lopez's trial. There is no "substantial" likelihood that the result of the trial would have been different. Harrington, 562 U.S. at 112. We have no concern that this was a trial that "cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Prejudice is not demonstrated.

III

The State also contends that the trial court erred by ruling that there exists a Fourteenth Amendment due process right to representation by counsel who is not suffering from mental illness. This is so, the State avers, because no such

per se rule of ineffective representation exists; the performance of an attorney suffering from mental illness is governed by the Strickland test, and it is the Sixth Amendment, not the Fourteenth Amendment, which governs the right to counsel. The State is correct.

In its ruling on defendant's motion for a new trial, the trial court stated:

[I]t seems to the court that, as a matter of due process, a defendant is entitled to be represented by somebody who is not suffering from mental illness. And so this is essentially a different way of approaching the issues, and it's really an independent basis for finding that Mr. Lopez should be given a new trial.

No modern Supreme Court decision has grounded the right to effective assistance of counsel in the due process clause of the Fourteenth Amendment. The most notable case to have done so was Powell v. Alabama, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932). In Powell, the Supreme Court found a denial of due process where the state trial court effectively failed to appoint counsel until the date of trial in a capital case.[3] Powell, 287 U.S. at 56.

The Powell opinion, of course, predates Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), in which the Supreme Court held that the Sixth Amendment right to counsel requires that the states appoint counsel for indigent defendants in criminal cases. In the years since Gideon, no subsequent decision has grounded the right to effective assistance of counsel in the due process clause.

---

[3] In Powell, several black men were accused of raping two white women on a train. Powell, 287 U.S. at 49-50. Although the trial court asked members of the state bar to represent the defendants, no specific attorney was appointed to represent the defendants prior to the day of the trial and the subsequently-appointed attorneys had virtually no opportunity to investigate and prepare a defense. Powell, 287 U.S. at 53-59.

Recognizing that the United States Supreme Court has never held that an attorney's mental illness warrants an automatic presumption of ineffectiveness, the Ninth Circuit noted that mental illness is "too varied in its symptoms and effects to justify a per se reversal rule without evidence that the attorney's performance fell below the constitutional norm." Smith v. Ylst, 826 F.2d 872, 876 (9th Cir. 1987); see also Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (holding that an attorney diagnosed with Alzheimer's disease was not per se ineffective counsel).

Rather than deeming mentally ill attorneys as automatically constitutionally ineffective, courts properly review the performance of a mentally ill attorney under the Strickland test. See Johnson v. Norris, 207 F.3d 515, 518 (8th Cir. 2000) (holding that the Strickland test should be used to evaluate an ineffectiveness claim against an attorney with bi-polar disorder). The Strickland standard encompasses an *objective* standard of reasonableness. Therefore, even when an attorney is mentally ill, if the performance delivered meets professional standards, the attorney has not rendered constitutionally ineffective assistance. See Strickland, 466 U.S. at 688.

There is no basis in law for the trial court's ruling that the Fourteenth Amendment's due process clause provides criminal defendant's with a right to be represented by an attorney free of mental illness.

The trial court erred by deeming trial counsel constitutionally ineffective. Accordingly, the trial court erred by granting a new trial. Judgment should be entered on the jury's verdict.

Reversed.

We concur: