[No. 24503-1-I.    Division One.    June 22, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. EUGENE EDWIN MAKELA, *Appellant.*

*Richard Alan Hansen, David Allen,* and *Allen & Hansen P.S.,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

KENNEDY, J. — Eugene Edwin Makela appeals his judgment and sentence for second degree statutory rape and two counts of indecent liberties. He contends that the trial court improperly admitted the victim's out-of-court statements as "prior consistent statements" under ER 801(d)(1)(ii) and evidence of the victim's reputation for truthfulness under ER 608. He further contends that the trial court erred in making various other evidentiary rulings, in denying his motion for a mistrial, and in granting a stay of proceedings on count 1 pending appeal.[1] We affirm the appellant's conviction and sentence. We reverse the stay on count 1 and remand for entry of an order dismissing count 1 pursuant to CrR 3.3(i).

The State charged that Makela had sexual intercourse and other sexual contact with J during the period of September 1981 to December 1984, when J was between 9 and 12 years old.[2] In July 1988, J and her mother V had not been getting along well. J, who was then 16 years of age, was angry with her mother for several reasons. J recently had been grounded and subjected to what she felt was an unreasonable curfew. V was upset about an incident involving J's possession of a switchblade knife for which J had been given a ticket. J talked about moving out and told her

---

[1] The jury was unable to reach a verdict on count 1, which charged Makela with first degree statutory rape.

[2] J's mother V and Makela were romantically involved from 1977 until late 1983, when they separated and Makela moved out of V 's home. They continued dating and finally stopped seeing each other in June 1984.

mother, "I have written you a letter. I might give it to you sometime." V found the letter shortly thereafter and read it. In the letter, J accused her mother of being unaware of what was going on in J's life. As an example of that, J stated that Makela had continually "molested" her during the time that V had been involved with him. V promptly confronted J with the letter. After J told V that what she had written in the letter was true, V scheduled a counseling session for herself and J with Elise Ernst, a therapist. Following the counseling session, Ernst reported the abuse to Child Protective Services. V then reported it to the police.

Makela denied ever having sexual contact with J. The defense theory was that J and her mother had fabricated the allegations of sexual abuse for a variety of reasons, including but not limited to a desire for revenge because Makela had broken up with V 4 years earlier, causing V to suffer emotional distress. The defense also theorized that J's allegations in July of 1988 were motivated by J's desire for more freedom, including the freedom to engage in sexual relations with her 22-year-old boyfriend and that J wished to get back at her mother for placing restrictions on J's conduct.

## PRIOR CONSISTENT STATEMENTS

Before trial, the State indicated it would call three of J's childhood friends, Nancy, Denise and Charles, to testify that J had disclosed the sexual abuse to them long before V reported it to police. Makela moved to exclude those statements on the basis that they did not qualify as prior consistent statements under ER 801(d)(1)(ii). He argued that, because J also had a motive to lie about the abuse to each of her childhood friends, the defense was not claiming that J had *recently* fabricated the allegations, and therefore J's statements were inadmissible to rebut the charge of fabrication.[3] The trial court rejected this argument, finding a lack of

---

[3]During extensive pretrial argument on this issue Makela's counsel advised the court: "[W]e don't intend to claim that she fabricated a story after she made the statements to these people. We're urging the jury to find that the entire story has been a fabrication from the beginning". Thus Makela's position was that ER 801(d)(1)(ii) did not apply.

evidence to support Makela's claim that J had a motive to fabricate the abuse at the time she disclosed it to her friends.

Makela contends that the trial court ruled prematurely that Nancy's testimony would be admissible, that the alleged fabrication was not recent, that the prior statements were erroneously introduced through J's direct testimony, that his cross examination was not an attack on J's credibility, that the admission of all three statements was cumulative and unduly prejudicial in violation of ER 403, and that the admissions of the statements violated his state and federal rights of confrontation.

■ Whether a prior statement is admissible under ER 801(d)(1)(ii) is within the trial court's discretion and will not be reversed absent a showing of manifest abuse of discretion. *State v. Dictado*, 102 Wn.2d 277, 290, 687 P.2d 172 (1984); *State v. Osborn*, 59 Wn. App. 1, 5, 795 P.2d 1174, *review denied*, 115 Wn.2d 1032 (1990). ER 801(d)(1)(ii) provides:

> A statement is not hearsay if —
> (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

■ While the witness' prior consistent statements are not admissible to prove that the in-court allegations are true, the statements are admissible to rebut a suggestion of recent fabrication. *State v. Bargas*, 52 Wn. App. 700, 702, 763 P.2d 470 (1988), *review denied*, 112 Wn.2d 1005 (1989). Recent fabrication is inferred when counsel's examination "raise[s] an inference sufficient to allow counsel to argue the witness had a reason to fabricate her story later." *Bargas*, 52 Wn. App. at 702-03. The alleged fabrication must be *recent* because if the statement were made *after* the events giving rise to the inference of fabrication, it would have no probative value in counteracting the charge of fabrication. *State v. Stark*, 48 Wn. App. 245, 249, 738 P.2d 684, *review denied*, 109 Wn.2d 1003 (1987); *Osborn*, 59 Wn. App. at 5. Further, a charge of recent fabrication can be rebutted by the use of

prior consistent statements only if those statements were made under circumstances indicating that the witness was unlikely to have foreseen the legal consequences of his or her statements.[4] *State v. Epton,* 10 Wn. App. 373, 377, 518 P.2d 229, *review denied,* 83 Wn.2d 1011 (1974); *State v. Bray,* 23 Wn. App. 117, 125, 594 P.2d 1363 (1979).

A. Timing of Trial Court's Ruling.

■ We first address Makela's argument that the trial court erred in ruling that Nancy's testimony would be admissible before the defense inferred, during its actual cross examination of J, that she had a motive to fabricate. Before trial, Makela moved in limine to exclude J's prior consistent statements. The trial judge initially granted Makela's motion to exclude Nancy's testimony[5] without prejudice to the State. She later ruled the testimony would be admissible at trial. The ruling was made after a pretrial interview of Nancy which was conducted jointly by the defense attorney and the deputy prosecuting attorney, followed by a thorough offer of proof, and extensive additional arguments on the motion in limine. During these arguments Makela's counsel related the several ways in which the defense intended to impeach J's credibility, some of which inferred a motive to fabricate dating from J's early childhood and some of which inferred a motive to fabricate arising in the summer of 1988. By the time of the trial court's ruling, it was abundantly clear both from Makela's trial brief and from extensive defense arguments during the pretrial motions that the entire defense case was to be devoted to an intensive attack on the victim's credibility and truthfulness.

Makela nevertheless argues that the trial court should have waited until after the actual cross examination of J to rule upon the admissibility of Nancy's testimony, as was

---

[4]Makela does not contend that the statements were made under circumstances indicating that J was likely to have foreseen the legal consequences of her statements.

[5]After hearing argument on the motion, the trial court indicated that a ruling on J's statements to Denise and Charles would be premature. Their testimony was not ruled admissible until after the defense cross-examined J.

done with respect to the testimony of Denise and Charles, because by ruling on the admissibility of Nancy's testimony before any "slashing" cross examination of J had actually occurred in front of the jury, the court erroneously assumed that such an attack on J's credibility would in fact occur. The gravamen of this argument appears to be that to the extent that J's credibility was attacked at all during her cross examination, Makela was free to make the attack because the court had already ruled that Nancy's testimony would be admissible. Makela relies upon *Garcia v. Providence Med. Ctr.*, 60 Wn. App. 635, 806 P.2d 766, *review denied*, 117 Wn.2d 1015 (1991) for this proposition.

In *Garcia*, the plaintiff in a medical malpractice action arising from the death of her newborn child sought to exclude evidence of her prior abortions. The defense argued that the prior abortions were relevant to the plaintiff's claim for emotional damages, the implication being that a woman who had elected to have prior abortions would not suffer much distress at the loss of a child she had elected to carry to term. The trial court ruled the evidence of the prior abortions would be admissible at trial. Thereafter the plaintiff testified on direct examination that she had had the prior abortions. Following a defense verdict the plaintiff appealed the adverse evidentiary ruling. The defense argued that the issue had not been preserved for appeal because plaintiff herself raised the issue at trial. The appellate court ruled that the plaintiff was not precluded from raising the issue. "A party is entitled to try to minimize the adverse effect of a decision by raising the damaging testimony first. Thus, we hold that Garcia has not waived review of the issue by her conduct." *Garcia*, 60 Wn. App. at 641. Here, the State does not contend that Makela has waived review of the issue of the admissibility of Nancy's testimony. Rather, the State argues that the trial court did not err in ruling that the testimony would be admissible. *Garcia* is thus inapposite to the issues raised in this appeal. Nevertheless, Makela asks us to analyze *Garcia* in view of

his contention that the trial court ruled prematurely that Nancy's testimony would be admissible at trial.

By way of contrast with *Garcia*, Makela represented to the trial court that his defense would include theories both of fabrication from the start and more recent or "renewed" fabrication. The court's pretrial evidentiary ruling with respect to the admissibility of Nancy's testimony did not alter Makela's planned trial strategy and in fact the ruling was made in the light of Makela's pronouncements of what that strategy would be. Makela's subsequent attacks upon J's credibility were not made in an effort to mitigate the adverse decision but were made in spite of the adverse decision and with full knowledge that the prior consistent statements J made to Nancy would be presented to the jury to rebut the inference of recent fabrication. *Garcia* does not stand for the proposition that Makela could proceed with his planned attack on J's credibility with impunity, once the trial court ruled that Nancy's testimony would be admissible, and then expect this court to ignore the fact that Makela conducted the defense case in a manner totally consistent with his pretrial pronouncements of what that trial strategy would be. We are not bound to reverse the court's pretrial evidentiary ruling simply because it was testimony made in response to Makela's pretrial motion, before J had actually been impeached.

Makela also argues that by making a pretrial ruling that Nancy's testimony would be admissible at trial, the court gave the State the same unfair advantage as the trial court gave the government in *United States v. Bolick*, 917 F.2d 135 (4th Cir. 1990). In *Bolick*, the government elicited detailed testimony from an undercover police officer as to what three highly impeachable witnesses had told him about Bolick's delivery of cocaine. By this strategy the government hoped to rehabilitate the three witnesses before they testified and accordingly before they had been impeached. On appeal, this was ruled to be reversible error. *Bolick*, 917 F.2d at 138-40.

By way of contrast, at Makela's trial, although the trial court ruled in advance that Nancy's testimony would be admissible, Nancy was not called to testify until after J's testimony, including her cross examination, was already completed. By that time it was fully evident that Makela's representations to the trial court, in his opening brief and during the course of the arguments on his motion in limine, about the nature of his defense, had been accurate. Makela now characterizes his pretrial representations to the trial court as mere "posturing", implying that the court should not have relied upon his counsel's representations of the nature of his defense in ruling upon his pretrial motions. We reject Makela's argument. Were we to adopt his position it would radically change accepted trial practice. The trial court would be unable to rely upon offers of proof and arguments of counsel in order to make rulings outside the presence of the jury.

Although part of Makela's theory was that J had fabricated her story of the abuse from the time she was approximately 9 years of age, he clearly advised the trial court that he would also argue that J raised the allegations in the summer of 1988 in order to get back at her mother and that J and V thereafter conspired to prosecute Makela in order to punish him for breaking up with V in 1984. The trial court was thus fully apprised as to the nature of Makela's fabrication theories. Unlike the situation with Denise and Charles, the court had also received a thorough offer of proof as to the content of Nancy's testimony. There was no error as to the timing of the trial court's ruling as to the admissibility of Nancy's testimony.

B. Recent Fabrication or Improper Motive.

Makela argues that, although prior consistent statements are admissible to rebut a charge of recent fabrication, the trial court should not have permitted Nancy, Denise and Charles to testify about J's prior disclosures of sexual abuse because she also had a motive to fabricate when she made those disclosures.[6] In his trial brief and in his argument on

---

[6]Makela also contends that the testimony of Elise Ernst, that J reported the sexual abuse to her, was improperly admitted as a prior consistent state-

the motion to exclude the testimony in question, Makela contended that J's desire to gain intimacy with her friends and to ward off Charles' sexual advances motivated her to lie to them about the alleged abuse. During cross examination of J and V and in closing argument, counsel suggested that J was motivated to lie about the abuse for three additional reasons: (1) she was angry with Makela for trying to be a father figure; (2) she and V were angry with him for breaking up with V;[7] and (3) she wanted to punish her mother for grounding her and setting what she felt were unreasonable rules.[8]

The mere assertion that motives to lie may have existed at the time of the prior statement is insufficient to prevent their admission. The trial court must decide, as a threshold matter, whether the proffered motive evidence rises to the level necessary to exclude the prior consistent statement. Here, the trial court ruled that it did not and we agree. If the trial court were prohibited from making such a threshold evaluation, there would be little reason for ER 801(d)(1)(ii) to exist. Prior consistent statements would become inadmissible every time the party against whom they were offered proffered a "motive", however baseless, for the declarant to fabricate the statement at the time she made it. This is not to say that the party against whom the prior statements are offered may not present his or her theory that the motive to fabricate existed when the prior statements were made. Both the prior statement and the

---

ment. Ernst's testimony was admitted, not for that purpose, but for the purpose of showing that V, in first seeking counseling for her daughter rather than going to the police, was more concerned with dealing with the emotional impact of the abuse than with punishing the defendant. The evidence was therefore relevant to rebut Makela's defense that V and J were fabricating the allegations of abuse to retaliate against him.

[7]Counsel's cross examination of both J and V on this point indicates that Makela wanted the jury to infer that the two had conspired to fabricate the abuse in order to punish Makela for having hurt V.

[8]Clearly, reason (3) arose after J made the disclosures to her friends and thus could not bar their admission as prior consistent statements under ER 801(d)(1)(ii).

proffered motive evidence may be presented to the jury, as was done in this case.

■ We hold that once the trial court has made the threshold determination that the proffered motive evidence does not rise to the level necessary to *exclude* the prior statement, it is for the jury to weigh the testimony against the opposing party's theory that the victim was motivated by something other than the truth to make the statement. If the trial court had excluded the prior statements based on Makela's proffered improper motive evidence in this case, it would have precluded the jury from making the credibility determinations that are exclusively its domain.[9]

### C. Timing of Makela's Attack on J's Credibility.

Makela next contends that the three witnesses' testimony was inadmissible hearsay because the trial court erroneously permitted the State to introduce the statements through J's direct testimony before the defense cross-examined her. He therefore argues that the defense did not first attack her credibility as required under ER 801(d)(1)(ii) and case law.[10]

The testimony in question arose twice during J's direct examination. On the first occasion, the prosecutor asked J

---

[9] Makela's reliance on *State v. Harper*, 35 Wn. App. 855, 670 P.2d 296 (1983), *review denied*, 100 Wn.2d 1035 (1984) and *State v. Bargas*, 52 Wn. App. 700, 763 P.2d 470 (1988), *review denied*, 112 Wn.2d 1005 (1989) is misplaced. In *Harper*, the victim's report of abuse to a caseworker was not relevant as a "prior" statement because it was made after the abuse had been reported to the police. *Harper*, 35 Wn. App. at 856-58. The *Bargas* court ruled the rape victim's statement to an investigating officer inadmissible as a prior consistent statement on the basis that, while the defense attempted to point out inconsistencies in the victim's testimony, his questioning did not raise an inference of recent fabrication. *Bargas*, 52 Wn. App. at 702-03. Here, J made the statements to her friends long before the abuse was reported to police, and the defense did far more to discredit J's statements than merely endeavor to reveal inconsistencies in her testimony.

[10] Makela relies on *Thomas v. French*, 99 Wn.2d 95, 659 P.2d 1097 (1983), in which the court held that a letter of complaint written by dissatisfied cosmetology students to the State Director of Licensing was inadmissible as a "prior consistent statement" because it was admitted on direct examination of one of the declarants. *Thomas* is inapposite here because the defendants in that case abandoned their claim of recent fabrication prior to admission of the letter. 99 Wn.2d at 103.

whether she provided any further information to the police after her first interview with them. J responded that she gave the police a list of telephone numbers and addresses of the people she had named in the first interview as persons she had told about the abuse before she told her mother.[11] Later on during the direct examination J was asked who was the first person she had told about the abuse. She responded that the first person she told was her childhood friend, Nancy. There was no objection to this question and answer. The prosecutor then asked what J told Nancy, the defense objected, and the objection was sustained. The prosecutor then asked J whether she had told others, besides Nancy, about the abuse before she told her mother. J answered, "Yeah". The defense objected and asked that the response be stricken, which request was denied.

We find no error in these evidentiary rulings. Even in the absence of an attack on the credibility of the complaining witness, in criminal trials for sex offenses the State is permitted to show in its case in chief *when* the complainant first made a complaint consistent with the charge, although the *details* of the complaint may not be elicited. *State v. Murley*, 35 Wn.2d 233, 236-38, 212 P.2d 801 (1949). No such details were elicited here.[12]

D. Sufficiency of Makela's Attack on J's Credibility.

Makela next contends that the prior consistent statements were inadmissible because he did not attack J's credibility. He claims that the State "opened the door" by bringing up the fact that J had gotten in trouble for carrying her mother's switchblade and that she had lied to her

---

[11]Although the defense moved to strike this response and requested a side-bar, following the sidebar there was no renewal of the motion to strike the response and no ruling was made on the record with respect to the motion to strike. Thus we are unable to review the alleged error. *State v. Noltie*, 116 Wn.2d 831, 844, 809 P.2d 190 (1991).

[12]Further, when the prosecutor asked J who she first told of the abuse, the defense attorney had already vigorously cross-examined J's mother and elicited testimony from which he could argue that J and her mother had conspired to prosecute Makela. It was therefore obvious to the court by that point in the trial that J's prior consistent statements to her friends were relevant to rebut the direct claim of recent fabrication.

mother about having had sex with her boyfriend. He argues that his cross examination merely explored those incidents brought out by the State and was not an attack on J's credibility. His argument fails.

The State properly questioned J and V about the problems J experienced that summer to show the circumstances in which V found J's letter disclosing the sexual abuse. Explaining the events of that summer also helped the jury understand the context in which J revealed her "secret". While these incidents were relevant in the State's case to explain how V learned of the abuse, the defense used them for an entirely different purpose: to establish J's and V's motives to fabricate the allegations of abuse. The defense inquired into J's "troubled" summer to suggest that she was so angry with her mother that she would fabricate her allegations to get back at her.

■ In addition, apart from the incidents of that summer brought out by the State, defense counsel sought to elicit from J that she was resentful of Makela for having been a disciplinarian during the time he lived with J and her mother. The defense also questioned J about having stolen candy as a child and whether she was afraid Makela would punish her when he found out. Finally, defense counsel asked J directly if her allegations were "fabrications". Thus, the record clearly shows that Makela not only attacked J's credibility, but also *expressly* charged that she was fabricating her allegations. These inferences and charges were certainly sufficient to warrant admission of the prior consistent statements.

E. Objection to Testimony on ER 403 Grounds.

■ Makela next argues that, even if the three witnesses' testimony relating J's prior consistent statements was admissible under ER 801(d)(1)(ii), the testimony of Denise[13] and Charles[14] should have been excluded as cumulative and

---

[13]Denise testified that she and J became good friends in 1986, their ninth grade school year. Denise and J were having a pizza and sharing confidences when Denise revealed that she had been sexually abused by a family member. J responded that she, too, had been sexually abused by her mother's former boyfriend.

[14]Charles testified that he became close friends with J when she was in the seventh and eighth grades. One day they were kissing and Charles tried to put

unfairly prejudicial under ER 403. At trial, however, Makela objected to the evidence on the grounds of hearsay, vagueness, and violation of his right to confront the witness.[15] A party cannot assign error to an evidentiary ruling when "the objection at trial was insufficient to apprise the trial judge of the grounds of objection asserted on appeal." *State v. Maule*, 35 Wn. App. 287, 291, 667 P.2d 96 (1983). Makela is therefore precluded from challenging the admission of the prior consistent statements on ER 403 grounds.

F. Confrontation Clause.

■ Makela finally argues that the trial court's admission of the statements violated his state and federal constitutional right of confrontation. This argument lacks merit. As the trial court correctly observed, the requirements of ER 801(d)(1) that the declarant testify at trial and be subject to cross examination concerning her prior statements ensures that confrontation clause concerns will be met. *See California v. Green*, 399 U.S. 149, 153-64, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970) (confrontation clause does not bar admission of prior out-of-court statements when declarant testifies in court and is subject to cross examination). J testified at trial, and the defense thoroughly and vigorously cross-examined her. Makela's right to confront the witnesses against him in court was not violated.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WEBSTER, A.C.J., and PEKELIS, J., concur.

Reconsideration denied July 29, 1992.

Review denied at 120 Wn.2d 1014 (1992).

---

his hand down J's pants. She became "really nervous and really hyper" and told him to stop, stating that her mother's boyfriend had sexually abused her.

[15]Different counsel represented Makela at trial and on appeal.