IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72405-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KENNON GREGORY FASTRUP, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 28, 2016 |
| | ) | |

BECKER, J. — Kennon Fastrup was convicted of the murder of Diane Grisby. He claims that his right to confidential communication with his attorney was violated during jury selection, but there is no evidence of this in the record. He argues that many of his ex-girlfriend's comments about his bad prior acts were improper. But at trial he did not object, objected on a different ground than he raises on appeal, or had improper comments stricken. He complains of improper jury instructions, but he proposed these instructions. Other evidence to which Fastrup objects was properly admitted after he opened the door or as rebuttal. Finding no error, we affirm.

## FACTS

On May 5, 2012, firefighters responded to a report of a car on fire in Black Diamond, Washington. The firefighters discovered a charred human body in the

trunk of the car, later identified as the body of Diane Grisby, Kennon Fastrup's girlfriend.

An investigation followed. Grisby's mother said she had last seen Grisby at a car impound lot two evenings earlier with Fastrup and Michelle Backstrom, Fastrup's ex-girlfriend. Detectives began searching for Fastrup and Backstrom, who fled from law enforcement together. One week later, on May 11, 2014, detectives found Fastrup and Backstrom and, after a high-speed car chase, arrested them both.

Immediately after their arrest, both Backstrom and Fastrup were separately questioned by police. Backstrom admitted that she and Fastrup murdered Grisby in Backstrom's garage on the night of May 4, 2012. Backstrom told the police that she and Fastrup placed Grisby's body in the trunk of Grisby's car and, late the next night, drove the car to Black Diamond and lit it on fire in an attempt to dispose of Grisby's body.

Backstrom eventually entered into a plea deal with the State. She pled guilty to second degree murder, was sentenced to 15 years in prison, and agreed to testify against Fastrup. Fastrup was charged with first degree murder-domestic violence, second degree murder in the alternative, second degree arson-domestic violence, attempting to elude a pursuing police vehicle, and misdemeanor violation of a court order-domestic violence.

Fastrup's trial proceedings took place over the span of one month in June and July 2014. The State called 20 witnesses. Only 4 of these witnesses are relevant to Fastrup's appeal: Backstrom, two detectives who interviewed

Backstrom and Fastrup on the day they were arrested, and a jail guard. Fastrup did not testify. The defense did not call any witnesses. Fastrup's defense theory was that Backstrom murdered Grisby, then made up a story to pin the murder on him. Fastrup tried to show Backstrom was jealous and angry that Fastrup left her for Grisby.

A jury found Fastrup guilty of all charges on July 9, 2014. Fastrup appeals.

## CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION

During jury selection, the trial judge returned from a morning recess and said: "OK, counsel, while we were on our morning break, my bailiff had come with some information to me. When Juror 35 was brought in for individual questioning, she noted that Mr. Fastrup had demonstrated non-verbal recognition of Juror 35. And so I wanted to inquire whether that was someone that he was familiar with or knew in any way." Fastrup stated that the prospective juror looked like someone he knew from high school. The court explained that "my bailiff came to me and indicated that she had noticed that Mr. Fastrup had responded when he saw Juror 35 in such a way that it looked like he knew Juror 35. So we just wanted to follow up and I understand that now Mr. Fastrup has indicated he thought he looked like someone he had went to high school with, so."

There was no further discussion about the bailiff until after the jury found Fastrup guilty. After the trial court denied his motion for a new trial, Fastrup moved the court to reconsider. In his motion to reconsider, Fastrup claimed for

the first time that the bailiff had eavesdropped on a confidential conversation between himself and his attorney during jury selection, in violation of his right to counsel. He renews this argument on appeal.

There is no evidence in the record that the bailiff overheard or observed any type of communication between Fastrup and his attorney. The bailiff's observations were based on Fastrup's apparent nonverbal recognition of the juror. For this reason, Fastrup's claim of interference with confidential attorney-client communication fails.

## PISTOL-WHIPPING INCIDENT

During pretrial motions in limine, both parties agreed that they could question Backstrom about an incident where she broke the windshield of Grisby's car with a hatchet. On direct examination during its case-in-chief, the State asked Backstrom about this incident. Backstrom testified that Fastrup pistol-whipped her and stole her phone and other personal property. She said that when Grisby came to pick Fastrup up, he still would not give her phone back, so she hit Grisby's windshield with a hatchet and broke it. Fastrup did not object to this testimony.

On cross-examination, Fastrup asked Backstrom whether she broke Grisby's windshield because she was mad. She said yes, she was mad at Fastrup for beating her severely and stealing from her. Fastrup asked her whether she broke the windshield because Fastrup was dating Grisby. Backstrom answered no, she broke the windshield because Fastrup stole from her and beat her. Fastrup asked her if she was mad at Grisby for taking her

4

boyfriend. Backstrom answered no, she did not want to keep Fastrup because he abused her, stole from her and her family members, and committed other bad acts. Fastrup confronted Backstrom with her earlier statement to detectives that she was not mad at Grisby for anything besides taking her boyfriend. Backstrom explained that she was mad for the first couple days but quickly got over it. Fastrup followed up by asking her if she had learned that he and Grisby were going away on a trip together, "and that bothered you, right?" Backstrom answered no. Fastrup asked her if she had heard that he and Grisby were getting married. Later, he again asked Backstrom to confirm that he had fallen in love with Grisby, "and that didn't bother you?" She answered no.

After the defense finished cross-examining Backstrom, the State moved to introduce a photograph of the injuries Backstrom suffered when Fastrup allegedly pistol-whipped her. The State pointed out that the cross-examination of Backstrom made it look like she was jealous of Grisby. The State argued that the photograph would corroborate Backstrom's testimony that she was mad at Fastrup, not jealous of Grisby. Over Fastrup's objection, the trial court allowed the photograph for the specific purpose of corroborating Backstrom's testimony about why she broke Grisby's windshield. The trial court admitted the photograph after giving a limiting jury instruction proposed by Fastrup.

On appeal, Fastrup argues that Backstrom's testimony on direct examination that he pistol-whipped her and the photograph of Backstrom's

injuries from the beating should have been barred under ER 404(b).[1] To challenge a trial court's admission of evidence, a party must raise a timely objection on specific grounds. State v. Gray, 134 Wn. App. 547, 138 P.3d 1123 (2006), review denied, 160 Wn.2d 1008 (2007); see also RAP 2.5(a) (appellate court may refuse to review any claim of error not raised in the trial court). There is an exception to this rule for a manifest error affecting a constitutional right. RAP 2.5(a)(3). However, evidentiary errors under ER 404(b) are not of constitutional magnitude. State v. Powell, 166 Wn.2d 73, 84, 206 P.3d 321 (2009). Because Fastrup did not object to Backstrom's testimony at trial, he waived any error with respect to her testimony.

As to the photograph, Fastrup opened the door to its admission. See, e.g., State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969) (where the defendant opens the door to particular subject, the State may pursue the subject to clarify a false impression). The State was entitled to admit the photograph to corroborate Backstrom's testimony that she broke Grisby's windshield out of anger towards Fastrup for pistol-whipping her and stealing her property, not because of jealousy towards Grisby. The trial court properly minimized any potential prejudice to Fastrup by giving the jury the limiting instruction he requested.

---

[1] ER 404(b) states, in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

6

## MIDTRIAL THREAT

Near the conclusion of Backstrom's cross-examination, the court recessed for lunch. During this recess, in the presence of at least one jail guard, Fastrup threatened to attack Backstrom when she returned to the witness stand and said that the jail guards were going to have to use force to stop him. The next day, the State moved to present evidence of this threat, arguing that it was evidence of Fastrup's guilty conscience and his intent to intimidate a witness in the case. Fastrup objected, arguing that any probative value was substantially outweighed by unfair prejudice. The trial court agreed with Fastrup and did not allow the jail guard to testify.

Later, as part of his effort to depict himself as frightened of Backstrom, Fastrup cross-examined one of the detectives and elicited certain statements Fastrup made to the detective on the day he was arrested. These included Fastrup's statement that he was "hella mad" at Backstrom, but "'what am I supposed to do, man?' . . . 'Fuck her up? No, fucking bitch will kick my ass, dude.'" In the interview, when the detective asked Fastrup why he did not confront Backstrom, Fastrup responded that he would have been in the exact same situation as Grisby—that is, dead. Fastrup told the detective that if he had refused Backstrom's request to help get rid of Grisby's car with her body in the trunk, Backstrom "'would have fucking put me there with her. I don't know, man. She sort of threatened me a couple times, you know.'" The intended effect of eliciting his own prior statements was to paint a picture that Fastrup could not

defend himself against Backstrom and that she compelled him to participate in the disposal of Grisby's body.

After this, the State renewed its motion to admit the jail guard's testimony. The State argued that by depicting himself as afraid to confront Backstrom, Fastrup opened the door to testimony that he had threatened to attack Backstrom on the witness stand. The trial court agreed that Fastrup had opened the door, determined that the probative value of the evidence now outweighed the potential prejudice, and admitted the jail guard's testimony with a limiting instruction proposed by Fastrup. The guard then testified that Fastrup told him "as soon as I took the handcuffs off he was going to jump over the table and run up there and beat the witness" and that jail guards would have to "fuck him up" to stop him.

Fastrup contends that the court erred by admitting the guard's testimony, citing ER 404(b). The decision to admit evidence of other wrongs or acts under ER 404(b) lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. See State v. Brown, 132 Wn.2d 529, 571-72, 940 P.2d 546 (1997), cert. denied, 523 U.S. 1007 (1998). The State may offer such evidence to rebut an assertion by the defendant. See, e.g., State v. Ciskie, 110 Wn.2d 263, 281, 751 P.2d 1165 (1988). In Ciskie, testimony from defendant's ex-wife that the defendant called her about his intent to kill the victim was permissible to rebut the defendant's testimony that he did not threaten to kill the victim. Ciskie, 110 Wn.2d at 281. Also, where the

defendant "opened the door" to a particular subject, the State may pursue the subject to clarify a false impression. Gefeller, 76 Wn.2d at 455.

Fastrup opened the door by bringing in his statements to the detective asserting that Backstrom would beat him, or even kill him, if he confronted her about Grisby's murder or did not cooperate in disposing of the body. These statements were material to Fastrup's defense theory that Backstrom alone killed Grisby and that Fastrup helped Backstrom get rid of the body only because he was afraid of her.

The State was entitled to rebut the impression that Fastup feared Backstrom with his contradictory statement that jail guards would have to forcibly restrain him from attacking Backstrom on the witness stand. The trial court properly minimized any prejudice to Fastrup by giving the jury the limiting instruction that he proposed. The trial court did not abuse its discretion in admitting Fastrup's mid-trial threat against Backstrom.

## ADDITIONAL ER 404(B) OBJECTIONS

Fastrup also challenges other comments Backstrom made regarding his bad character and bad acts as inadmissible under ER 404(b). But at trial, Fastrup either did not object, or objected on a different ground than he raises on appeal, or was successful in having the comments stricken.

Backstrom testified that Fastrup is "selfish," a "control freak," a "hateful little person," and "abused me for three years straight. He stole everything I had. . . . I lived in fear of him." Fastrup waived any objection to these allegedly improper comments because he did not object at trial.

9

Backstrom testified that Fastrup got her and Grisby addicted to drugs and that Fastrup "obviously did this," referring to Grisby's murder. Fastrup objected to both of these comments as nonresponsive. On appeal, he contends they were inadmissible under ER 404(b). A party may assign error in the appellate court only on the specific ground of evidentiary objection made at trial. State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020 (1986). Because Fastrup did not raise an ER 404(b) objection to these comments at trial, he may not raise this ground on appeal.

Backstrom testified that Fastrup gives women "double black eyes all the time," "got his licks in," and hung a noose in the garage "so I could commit suicide one day when he left." Fastrup moved to strike these comments. The trial court struck the comments and instructed the jury to disregard them. Courts generally presume that jurors follow instructions to disregard improper evidence. State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990), cert. denied, 498 U.S. 1046 (1991). Because the trial court instructed the jury to disregard these allegedly improper comments, we assume that the jury disregarded them and accordingly reject Fastrup's argument that reversible error occurred when the jury heard them.

Backstrom testified that Fastrup "would hold knives to me every day, almost." Fastrup objected, but before he could state any basis for his objection, the court intervened on its own and tried to ask Backstrom to stop speaking. Backstrom blurted out that Fastrup "robbed my house repeatedly" and "threw gasoline at my house." We conclude the remarks did not deprive Fastrup of a

fair trial. In light of all the other evidence admitted against Fastrup, particularly the testimony by Backstrom about how Fastrup pistol-whipped her and stole her personal belongings, there is no reasonable probability that the outcome of the trial would have been materially different had the jury not heard Backstrom's list of additional accusations. See, e.g., State v. Kidd, 36 Wn. App. 503, 507-08, 674 P.2d 674 (1983).

## LIMITING JURY INSTRUCTIONS

Fastrup proposed the following limiting jury instruction to be given before the photograph of Backstrom's injuries was introduced:

> You are about to be shown State's Exhibit 58. This exhibit is admitted for the limited purpose of corroborating Ms. Backstrom's description of the incident involving Ms. Backstrom breaking Denise Grisby's windshield with a hatchet. You are to consider it for no other purpose.

The trial court read this instruction exactly as proposed.

Fastrup proposed the following limiting jury instruction to be given before the jail guard testified about Fastrup's threat to attack Backstrom on the witness stand:

> You are about to hear testimony regarding a statement the defendant made to this witness. This statement is being admitted for the limited purpose of allowing the State to refute the defendant's prior statements regarding his fear of Ms. Backstrom. You are to consider it for no other purpose.

The trial court added the words "and his inability to defend himself" at the end of the second sentence, over Fastrup's objection. Besides this addition, the instruction was read as proposed.

11

Fastrup now argues that the words "corroborating" and "refute" in the instructions improperly conveyed the judge's personal opinion about the value of the evidence.

A party may not request a jury instruction and later complain on appeal that the requested instruction was given. State v. Henderson, 114 Wn.2d 867, 870, 792 P.2d 514 (1990). This is a strict rule, and the Washington Supreme Court has rejected the opportunity to adopt a more flexible approach. State v. Studd, 137 Wn.2d 533, 547, 973 P.2d 1049 (1999).

Fastrup requested these jury instructions, including the exact words that he now contends amounted to a comment on the evidence. He may not complain about them now.

PRIOR CONSISTENT STATEMENTS

The court allowed Backstrom to testify on direct examination about statements she made to detectives on the day she was arrested, one week after Grisby's murder. Fastrup contends Backstrom's testimony was improperly bolstered by the use of her prior consistent statements.

The statements were admitted under ER 801(d)(1)(ii). When offered to rebut a suggestion of recent fabrication, prior statements are not hearsay:

> A statement is not hearsay if—
> (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

ER 801(d)(1)(ii).

A defendant's cross-examination suggesting that a witness may have a motive to fabricate her story in order to receive a plea agreement for testifying against the defendant triggers ER 801(d)(1)(ii). State v. Thomas, 150 Wn.2d 821, 866, 83 P.3d 970 (2004). On cross-examination, Fastrup questioned Backstrom in an attempt to show that the State's plea offer gave her a motive to fabricate:

> Q    . . . And you ended up pleading to murder in the second degree, correct?
> A    Yes.
> Q    And the recommendation by the State was 15 years, correct? Is that right? Yes?
> A    Yes.
> Q    OK, now as part of that, you had done a statement of defendant on plea of guilty. Do you remember that?
> A    Yes.
> Q    And on that statement you had to give factual basis for entering into the plea, correct?
> A    Yes.
> Q    Now, had you not pleaded murder two and you had gone to trial, you would have been facing murder in the first degree just like Kenny, correct?
> A    Yes.
> Q    And amount of time would have been substantially more, correct?
> A    Um, no. I was charged with murder two and arson. That's what I have been facing is murder two and arson.
> Q    But had you gone to trial, the charges would have been amended to murder in the first degree, just like Mr. Fastrup, correct?
> A    Um, I suppose.
> Q    And you would have been facing a substantial, larger amount of time than you did by pleading to murder two, correct?
> A    Yes.

Fastrup also repeatedly accused Backstrom of using the time after her initial interview with detectives on the day she was arrested to fabricate lies. For example, Fastrup questioned Backstrom about the fact that she did not tell

detectives on the day she was arrested that she hit Grisby's hand with a meat cleaver but admitted it in an interview two years later. Fastrup asked, "So you had time to think about what you were going to say, correct?" Fastrup asked Backstrom whether the events of the murder were fresher in her mind when she gave her initial statement to detectives on the day she was arrested. When Backstrom said that the events were fresher in her mind at trial, Backstrom asked if that was "because you have had two years to create your story?"

On redirect, over Fastrup's objections, the court allowed the State to question Backstrom about prior consistent statements that she made to detectives on the day of her arrest. A detective also recounted Backstrom's prior consistent statements, again over Fastrup's objections. Fastrup contends the prior consistent statements were improperly admitted. We review for abuse of discretion. State v. Makela, 66 Wn. App. 164, 168, 831 P.2d 1109, review denied, 120 Wn.2d 1014 (1992).

The record supports the court's decision to apply ER 801(d)(1)(ii) to Backstrom's prior statements. First, Fastrup implied that Backstrom's interest in making a plea deal gave her a motive to fabricate her story. Second, he accused Backstrom of using the two years from the time of her initial statement to create her fabricated story.

The party offering the prior consistent statement must show that the statement was made before the witness's motive to fabricate arose. Thomas, 150 Wn.2d at 865. The witness must have made the statement under circumstances indicating that she was unlikely to have foreseen the legal

consequences of her actions. Makela, 66 Wn. App. at 168-69. Fastrup argues that the State did not satisfy this test because Backstrom already had a motive to lie on the day she was arrested. At that time, Fastrup argues, Backstrom knew Grisby was dead and knew there were would be legal consequences for her participating in the murder. But a mere assertion that the witness had a motive to lie, without factual support, is insufficient to bar the witness's prior consistent statements. Makela, 66 Wn. App. at 173-74. Instead, the statements are admitted and it becomes an issue for the jury to decide who is telling the truth. Makela, 66 Wn. App. at 173-74.

Fastrup's general allegation that Backstrom had a motive to lie as soon as she was arrested is unsupported. On the day Backstrom was arrested, she could not have known how the murder investigation and later criminal charges against both her and Fastrup were going to unfold. It is speculation to assert that she was fabricating details of the crime in order to facilitate the future plea deal in which she would promise to testify against Fastrup in exchange for a lesser charge.

We conclude the trial court did not abuse its discretion in admitting Backstrom's prior consistent statements from the day she was arrested.

Affirmed.

_Becker, J._

WE CONCUR:

_Schindler, J_

_Cox, J._