IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81143-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| M.B., | ) | |
| | ) | |
| DOB: 08/04/2002 | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — M.B. was convicted of rape in the second degree and felony harassment following a bench trial. The trial court ruled that statements the victim made to medical personnel were admissible under ER 803(a)(4), the hearsay exception for statements made for purposes of medical diagnosis or treatment. Additionally, the court ruled that any remaining statements contained in the redacted offer of proof provided by the State were not hearsay and admissible as prior consistent statements. On appeal, M.B. argues that these two evidentiary rulings were erroneous and prejudiced his right to a fair trial. The ruling as to the admission of the statements by the victim under ER 803(a)(4) was proper. While the court erred as to its ruling on prior consistent statements, that error was harmless. We affirm.

FACTS

On July 29, 2018, Glody Bonshe posted on social media that he had alcohol and marijuana to share. J.W. snuck out of her house to be picked up by Bonshe and two others. At some point, the group was dropped off at 7-Eleven to buy drinks to mix with hard alcohol. Bonshe, J.W. and D.M. were picked up at the store by M.B. and they all drove back to D.M.'s house.[1]

At the house, Bonshe and M.B. were confrontational with J.W. about her relationship with her boyfriend. J.W. became uncomfortable and attempted to excuse herself by first going to a bathroom and then later a bedroom; but they followed her and continued to control the interaction both as to the conversation and her movements. In the bedroom, both M.B. and Bonshe were touching and restraining J.W.

J.W. and M.B.'s accounts of what transpired next are vastly different. M.B. claimed that they had prior consensual sexual contact and that they engaged in the same again on this night. J.W. claims that she was restrained by M.B. and Bonshe and that both committed acts of sexual assault, specifically that M.B. raped her. J.W. said that Bonshe left the room prior to the rape. She later learned that the incident had briefly been filmed. M.B. took J.W. home at around 6:30 a.m. at her request because she did not know exactly where she was and she did not want to call her parents.

J.W. did not see M.B. until nearly a year later in May 2019. She was with her friend, Y.G., and stopped for food. They saw M.B. and Y.G. greeted him

---

[1] In the interest of privacy, we use initials to identify parties involved who were minors at the time of these events.

because she considered him a close friend. When they got outside, J.W. reminded Y.G. what M.B. had done. After leaving the restaurant, J.W. realized that the vehicle needed gas and pulled into the first gas station she saw. Just as J.W. was about to exit the vehicle, M.B. pulled into the same gas station to meet some friends. J.W. alleged that M.B. drove up next to her, rolled down the window and displayed a handgun while maintaining eye contact with her. After a brief exchange of words between the two groups, J.W. drove away.

The State filed charges against M.B. for rape in the second degree (forcible compulsion) and felony harassment threat to kill based on these two incidents. At M.B.'s bench trial, the court ruled that J.W.'s statements made to medical staff during a hospital visit following the rape were admissible. The statements at issue were made by J.W. to Dr. Jessica Depaepe, Sexual Assault Nurse Examiner (SANE), Ashley Degron, and Emergency Room Intervention Team counselor, Elizabeth Schaumberg. The State provided an offer of proof as to the anticipated testimony of these three witnesses. After taking argument on the matter, the court ruled that the majority of the statements made to Depaepe and Degron fell under the hearsay exception ER 803(a)(4), statements for purposes of medical diagnosis or treatment. The court ruled a portion of the statements made to Schaumberg were also admissible under ER 803(a)(4). The court further ruled that any remaining statements that were included in the redacted offer of proof regarding statements made to Depaepe, Degron, and Schaumberg were admissible as prior consistent statements that did not constitute hearsay. Later, while Schaumberg was testifying, the defense asserted that no sufficient foundation had been laid for

any of the statements at issue to be admissible through Schaumberg under ER 803(a)(4) and the court agreed. However, they were then admitted as prior consistent statements. At the conclusion of the bench trial, M.B. was convicted as charged. M.B. now appeals, arguing these two evidentiary rulings were prejudicial error such that his disposition order should be reversed.

ANALYSIS

We generally review evidentiary rulings for abuse of discretion. State v. Burke, 196 Wn.2d 712, 741, 478 P.3d 1096 (2021), petition for cert. filed, No.20-8312 (U.S. June 15, 2021). A trial court abuses its discretion if the court's decision is unreasonable or based on untenable grounds or reasons, such as a misconstruction of a rule. State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). However, whether a challenged statement constitutes hearsay is a question of law reviewed de novo. State v. Gonzalez Gonzalez, 193 Wn. App. 683, 687, 370 P.3d 989 (2016). Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." ER 801(c). Hearsay statements are only admissible if they fall within an established hearsay exception. ER 802.

The basic framework for our analysis relies on several procedural facts. First, J.W. testified at trial, providing details of the events as she recalled them. As such, the majority of the challenged statements were cumulative as to facts provided by her own direct and cross-examination. Further, M.B.'s identity was not at issue at trial; he did not deny that sexual contact occurred, but rather asserted that it was consensual. In that context, M.B.'s opposition to the

statements admitted by way of the care providers is that they improperly bolstered J.W.'s credibility.

I.     ER 803(a)(4) Statements Made for Medical Diagnosis or Treatment

The trial court did not make a precise ruling as to which statements came in under ER 803(a)(4) and which remaining statements were admitted as non hearsay under ER 801(d)(1)(ii).  The trial court made a carte blanche determination that any statements to which Depaepe and Degron would testify that did not meet the medical diagnosis exception to hearsay would be admitted as prior consistent statements.  As a cautionary measure, such a ruling unnecessarily complicates appellate review.  However, in light of our harmless error analysis, it is unnecessary to decode the haphazard ruling as to Depaepe and Degron's testimony.

ER 803(a)(4) provides in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . .
      (4) <u>Statements for Purposes of Medical Diagnosis or Treatment.</u> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

"[T]he test for statements made for medical diagnosis or treatments considers the subjective purposes of both the declarant and the medical professional."  <u>Burke</u>, 196 Wn.2d at 740.  ER 803(a)(4) only applies when the statement is "reasonably pertinent to diagnosis or treatment."  "A party demonstrates a statement to be reasonably pertinent when (1) the declarant's motive in making the statement is to

promote treatment, and (2) the medical professional reasonably relied on the statement for purposes of treatment." State v. Williams, 137 Wn. App. 736, 746, 154 P.3d 322 (2007). Statements of fault are generally inadmissible, but depend on the context in which the statements are made. Id. "Statements attributing fault to a member of the victim's immediate household may be reasonably pertinent to treatment and are thus admissible because it is 'relevant to the prevention of recurrence of injury.'" State v. Ackerman, 90 Wn. App. 477, 482, 953 P.2d 816 (1998).

Here, M.B. argues that "[t]he State failed to make the necessary showing that J.W.'s motive in making the statements was to promote treatment rather than forensic evidence." In the trial court, M.B. argued that J.W.'s sole claim that she went to the hospital "[t]o have a rape kit done" was insufficient to establish that J.W's motive was to promote treatment and instead demonstrated that her statements were purely for forensic evidence gathering. The offer of proof provided by the State as to Depaepe's anticipated testimony indicated J.W. also had a concern about pregnancy, which establishes the motive for J.W.'s visit was, at a minimum, mixed. However, J.W.'s own testimony at trial did not corroborate this aspect of Depaepe's testimony.

In reviewing the statements generally, it is reasonable to conclude that J.W. perceived the statements as related to promoting medical treatment with regard to those she made to Depaepe. Further, Depaepe explained that much of her inquiry with patients is generally driven to determine treatment. She then testified as to her notes regarding J.W. and that the focus was to assess her mental and physical

state to see what medications or intervention she may need. There was sufficient foundation laid by Depaepe such that the court could find there was a subjective belief both by J.W. and the providers that the purpose of her examination was generally for treatment or at least a mixed motive of both seeking medical care and evidence gathering.

Here, we are guided by the recent Burke opinion in which the Supreme Court deemed the victim's "answers to the questions about penetration, ejaculation, contraception, strangulation, grabbing, and her position during the assault were also likely motivated by a desire to promote medical treatment specific to sexual assault." 196 Wn.2d at 741. The court also determined the admission of a description of the assault was proper. Id. That case involves statements made by the victim during a sexual assault exam in which she answered questions about contraception and ejaculation that related to both collecting forensic evidence and possible treatment for sexually transmitted infections or pregnancy. Id. at 735. The victim also discussed strangulation and positioning during the assault which revealed additional injuries requiring treatment. Id. The patient further discussed her need for crutches to walk due to arthritis as she did not have any in her possession while at the hospital. Id. However, the court found that the victim's statements to medical staff related to the description of her assailant were not properly admitted. Id. at 742.

In the current case, J.W.'s statements to the SANE and doctor are quite similar to those in Burke. Here, the admitted statements focus on the details of the incident which could have helped the providers determine injuries or J.W.'s mental

condition, either of which might have required treatment or diagnosis. We find the admission of these statements under ER 803(a)(4) does not constitute an abuse of discretion. Additionally, J.W.'s identification of M.B. to the SANE as her assailant is not of concern since the judge ruled that statement was inadmissible and the trial court is presumed not to consider inadmissible evidence. Blair, 3 Wn. App. 2d at 353.

In considering this assignment of error, our review of the record revealed an error in the findings of fact law prepared by the State, signed by the trial judge and entered after the conclusion of the juvenile bench trial. The State directly copied and pasted the unredacted version of the offer of proof for both Degron and Schaumberg's testimony, which includes a significant number of statements which the trial court had deemed inadmissible. The defense expressly objected to these findings of fact, 42 and 43, in the proceedings below and again challenges them on appeal. The wholesale inclusion of the unredacted offer of proof in the findings directly contradicts the court's evidentiary rulings. Consequently, it was error for the State to have provided these findings and for the trial judge to have approved them as presented given that they explicitly contradict some of the trial court's admissibility rulings. As such, we strike those findings which should have not have been included. However, pursuant to our harmless error analysis set out below, this error does not warrant reversal.

II.     ER 801(d)(1)(ii) Prior Consistent Statements

M.B. next avers that the court improperly applied ER 801(d)(1)(ii) to the remainder of J.W.'s statements admitted through Degron and Depaepe (those not

already deemed admissible under the medical treatment exception) and to those intended for admission through Schaumberg's testimony. We agree. Given the lack of any suggestion by the defense of recent fabrication and, independently, the timing of the statements, ER 801(d)(ii) was inapplicable.

> ER 801(d)(1) provides in relevant part that a statement is not hearsay if:
>
> The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is[] (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

"While the witness' prior consistent statements are not admissible to prove that the in-court allegations are true, the statements are admissible to rebut a suggestion of recent fabrication." State v. Makela, 66 Wn. App. 164, 168, 831 P.2d 1109 (1992). Cross-examination merely attempting to call attention to inconsistencies in the witness's testimony does not raise an inference of recent fabrication and does not justify admission of prior consistent statements. State v. McWilliams, 177 Wn. App. 139, 148, 311 P.3d 584 (2013). But if cross-examination provides an inference "that the witness changed [their] story in response to an external pressure, then whether that witness gave the same account of the story prior to the onset of the external pressure becomes highly probative of the veracity of the witness's story given while testifying." State v. Thomas, 150 Wn.2d 821, 856, 83 P.3d 970 (2004). "The alleged fabrication must be recent because if the statements were made after the events giving rise to the inference of fabrication, it would have no probative value in counteracting the charge of fabrication." Makela, 66 Wn. App. at 168 (emphasis in original). "Accordingly, the proponent of

the testimony must show that the witness's prior consistent statement was made before the witness's motive to fabricate arose in order to show the testimony's veracity and for ER 801(d)(1)(ii) to apply." Thomas, 150 Wn.2d at 865 (emphasis in original). Additionally, a claim of recent fabrication can be rebutted by prior consistent statements only if the statements were made "under circumstances indicating that the witness was unlikely to have foreseen the legal consequences of his or her statements." Makela, 66 Wn. App. at 168–69.

Here, the trial court improperly utilized ER 801(d)(1)(ii) for two parallel reasons. First, no inconsistencies were established during the defense's cross-examination of J.W. to suggest a recent motive to fabricate. See State v. Bargas, 52 Wn. App. 700, 703, 763 P.2d 470 (1988) (holding ER 801(d)(1)(ii) inapplicable where the defense inferred victim was not being completely truthful, however the defense theory was that the victim "had fabricated her story from inception."). Second, even assuming that there was an assertion of a recent motive to fabricate, that motive would have come about prior to the time when the admitted statements were made. The motive to fabricate would be based on J.W. learning of the existence of the cell phone video of the incident with M.B. which was admitted into evidence. J.W.'s awareness of the existence of the video would mark the temporal period at which the motive to fabricate was established, prior to her visit to the hospital where the statements to the care providers occurred. Therefore, it was improper to utilize ER 801(d)(1)(ii) to admit the statements from the hospital as they were made after, not before, the motive to fabricate arose. The admission of J.W.'s statements to Depaepe, Degron and Schaumberg as prior consistent

statements was error, not only because the defense had not raised any inference of motive to fabricate during its cross-examination of J.W., but also because the timing of events as set out in the record demonstrates that any motive to fabricate would have arisen from inception.

A relevant portion of the transcript from J.W.'s cross-examination helps to illustrate the role timing necessarily plays in the application of ER 801(d)(1)(ii):

Q. [ ]On July 29, of 2019, you became aware that there may have been a video of sexual activity between you and [M. B.]; is that right?
A. Yes
Q. And when did you receive that information?
A. After I had already told [L.H.] what happened and after I had went back to sleep and I woke up. It was sometime after I had woken back up.
Q. All right. And you exchanged messages with Glody Bonshe about the video, did you not?
A. I did.
Q. And you were asking him repeatedly to, ["]Send me the video,["] right?
A. Yes
Q. And you were concerned, were you not, that your boyfriend at the time, Mr. [A.R.], would also receive that video; is that right?
A. I was more concerned that there was a video with me and potential pornographic content than whether or not he was going to see the video.
Q. Well, you didn't want him to know about this, did you?
A. I didn't go out of my way to keep it from him.
Q. Okay. Well, you didn't want him to know that you were leaving to smoke marijuana with Glody Bonshe on July 28th, did you?
A. No.
Q. So is it fair to say that you didn't want to—him to know anything about your relationship with Glody Bonshe, whatever it was?
A. Yeah.
Q. Yes?
A. (No audible response.)
Q. Now, when you—so you received the video after your demand to Glody Bonshe to send it to you?
A. Um-hmm.
Q. So is it fair to say that that's where you received it from?

A. Like I said, I don't remember exactly if I received it directly from Glody for the first time or if I received it from my boyfriend for the first time.

Q. At that time, people were aware that you were claiming that you had been raped the night before; is that right?

A. Yes.

Q. And you did nothing to that video after you received it; is that right?

A. I watched it.

Q. Well, that was an unclear question. What I mean by didn't do anything, what I'm saying is—is that you received it, it became part of the data inside your cell phone, and you didn't do anything with it to manipulate it or to change it or do anything of that nature; is that right?

A. That is correct.

Q. And we're talking about July 29th of 2018?

A. Yes.

Q. And we're not talking about September 4th of 2018?

A. Right?

Q. You received it July 29th. It stayed in your phone. You didn't do anything with it.

A. Yes.

This exchange demonstrates that if the defense did establish a motive to lie or a true claim of recent fabrication, it would have been based on J.W. learning of the existence of the captured video of the incident with M.B. and her resulting fear of its disclosure or dissemination. As such, this would be the temporal marker for when the motive was established: July 29, 2018. This occurred the same day as, but prior to, J.W.'s hospital visit during which the challenged statements were made. The admission of those statements under ER 801(d)(1)(ii) was error because the rule requires that prior consistent statements must have been made before the motive to fabricate. Thomas, 150 Wn.2d at 865.

At trial, the State merely argued that the prior consistent statements, which were not admitted under the medical purpose exception, should be admitted because J.W.'s credibility had generally been called into question. Thereby, "the

State should have the opportunity to introduce those prior consistent statements just as Defense is able to introduce inconsistent statements for the same reason." The trial court recognized that "the consistent statement offered has to have been made before any motive to fabricate a new story. And these statements were made like the next day, right?" However, the court then went on to disregard this critical fact because the "circumstances under which this consistent statement was made, minimiz[e] the risk the declarant foresaw, the legal consequences of the statement." The trial court informed the defense that its argument that there has always been a motive to fabricate (from inception) was a "good point[] to make in cross-examination and closing argument."

J.W. never made inconsistent statements such that this evidentiary rule should have been considered by the trial court. Even assuming that the cross-examination did establish a motive to fabricate, the State failed to establish that these statements were made prior to any such motive. The trial court improperly applied the rule as the cross-examination by the defense did not go beyond a general credibility challenge. The court further erred by recognizing that the statements were made after any possible motive to fabricate, yet still admitting them under this evidence rule. This was a misapplication of the rule such that it constitutes an abuse of discretion.

III.     Harmless Error

On appeal, error in admitting evidence will not result in reversal unless it causes prejudice to the defendant. Thomas, 150 Wn.2d at 871. This court applies "the rule that error is not prejudicial unless, within reasonable probabilities, the

outcome of the trial would have been materially affected had the error not occurred." State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981). M.B. asserts that these statements were used to bolster J.W.'s credibility. Again, this was not a case where identity, or the fact of sexual contact, was at issue. The primary question presented at trial was whether that contact was consensual. Here, both the written and oral findings of fact and conclusions of law indicate that, in addition to any statements made to the health care providers, the court also relied on J.W.'s consistent story to others, such as her friend, Y.G., Detective Shawn Martinell, and her school resource officer. Even if we were to assume that all statements made by J.W. at the hospital were improperly admitted, the error was harmless as the court's credibility determinations were based on a much broader range of information.

The trial court's oral findings are supportive of the general sentiments eventually expressed in the written findings of fact and conclusions of law. The court indicated there was no credible evidence of animosity from J.W. toward M.B. and that her willingness to provide sexually explicit messages she had exchanged with Bonshe to law enforcement were such that these details bolstered J.W.'s credibility. The court's comments during the oral findings further indicated much of the court's determination of J.W.'s credibility was based her demeanor at trial.

Particularly damning for M.B. is that the trial court expressly found him not to be credible, and reached similar conclusions as to the other defense witnesses who promoted his recollection of events and the general assertion that J.W. was not credible. As so many do, this case hinged on the court's determination of

credibility of the witnesses.  The court based much of those determinations as to J.W. and M.B. individually on the presentation of their respective versions of events at trial.  In fact, the emphasis by the court on the tone and demeanor of each witness demonstrates that, had the trial court not been presented with the statements J.W. made to medical personnel, the outcome of trial would have been the same.

Affirmed.

WE CONCUR:

Chun, J.

Appelwick, J.