# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 60130-3-II |
| Respondent, | |
| v. | |
| WILLIAM DAVID FARRIS, JR. | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — William D. Farris was convicted of first degree burglary–domestic violence (DV), second degree assault–DV, unlawful imprisonment–DV, and interfering with domestic violence reporting following a violent incident with his former girlfriend, C.N. Farris appeals, arguing that the trial court erred by permitting improper vouching of C.N.'s testimony and bolstering of her credibility. Farris also argues his convictions for second degree assault and unlawful imprisonment violate double jeopardy. We affirm.

### FACTS

In September 2023, C.N. obtained a domestic violence protection order against Farris. Four days later, Farris broke into C.N.'s two-story house in the middle of the night. Once inside, Farris attacked C.N. and would not allow her to leave. C.N. was eventually able to escape through a window and call 911 from a neighbor's home.

The State charged Farris with second degree assault–DV, first degree burglary–DV, unlawful imprisonment–DV, felony harassment, and interfering with domestic violence reporting.[1]

---

[1] The State also charged Farris with felony violation of court order, but this charge was later dismissed on procedural grounds.

Before the start of trial, Farris filed a motion in limine to preclude witnesses from commenting on the credibility of other witnesses. Specifically, Farris requested that the trial court,

> [p]rohibit any witness from vouching for another witness, or the prosecution from vouching or even suggesting that the witnesses for the State are credible, in . . . opening, examination, or closing.

Clerk's Papers (CP) at 11. The trial court granted Farris' motion.

C.N. took the stand first and testified that on the night of the incident, she awoke to the sound of breaking glass. When she heard footsteps on the stairs, she grabbed her phone and hid in the bathroom.

C.N. tried to call 911, but Farris forced open the bathroom door and shoved her into the wall. Once in the bathroom, Farris grabbed her phone and threw it out of reach saying, "Bitch, you're not calling the cops today; oh no . . . ." Verbatim Rep. of Proc. (VRP) at 204. Farris then punched her repeatedly, yelled at her, called her a "stupid bitch," and threatened to kill her. VRP at 207. C.N. recalled that, at some point, Farris stopped abruptly and went downstairs, continuing to yell at her as he did.

C.N. testified that she followed Farris downstairs and tried to escape out the front door. But Farris slapped her hands away from the door, told her, "You're not going nowhere," and threatened to punch her as he said, "You want some more?" VRP at 209. Farris then ordered C.N. to get on the couch, as he unzipped his pants and threatened to urinate on her. After a moment, Farris zipped up his pants and left the room.

C.N. testified that once Farris left the room, she escaped out a window and ran to her neighbor's house, where they called 911 and waited for the police to arrive.

The next day, Officer Hoyhtya-Keogh, who had been sitting at counsel table with the prosecutor throughout the trial, took the witness stand. He explained that he responded to the 911 call, interviewed C.N. at the scene, and took photos of her injuries.

At that point, the State asked the officer if he thought C.N.'s interview at the scene was "pretty much consistent" with her testimony the previous day in court. VRP at 282. Farris objected.

The trial court excused the jury to hear arguments about the objection. Farris argued that the State's question violated the motion in limine pertaining to improper vouching because asking the officer about the consistency of C.N.'s testimony was asking for a comment on the credibility of another witness. Saying that C.N.'s testimony was "consistent" was, according to Farris, essentially saying that C.N.'s testimony "must be accurate," which constituted vouching. VRP at 282.

The State responded that an answer to the question would not be vouching because the officer would not be commenting on the truthfulness of C.N.'s testimony or commenting on her credibility. The State also argued that the answer would not constitute hearsay "because it's not asking for a statement [C.N.] gave him." VRP at 283.

The trial court overruled Farris' objection, agreeing with the State that commenting on the consistency of C.N.'s statements was different than commenting on her credibility. The trial court also noted that although the issue was not whether the testimony was hearsay, the evidence rules allow admission of "prior consistent statements" and "inconsistent statements," which means that those types of statements are not comments on credibility. VRP at 284.

Farris did not raise any other basis for his objection to the question.

After the jury returned to the courtroom, the State repeated its question, and the officer gave a one-word answer:

> [State:] Was [C.N.'s] testimony yesterday consistent with what she told you that night?
>
> [Officer Hoyhtya-Keogh:] Yes.

VRP at 285.

After the close of testimony, the trial court gave its instructions to the jury. As to the charge of second degree assault, the to-convict instruction provided that the defendant must have inflicted "substantial bodily harm." It stated,

> To convict the defendant of the crime of assault in the second degree as charged in Count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 30th day of September, 2023, the defendant intentionally assaulted [C.N.];
>
> (2) That the defendant thereby recklessly inflicted substantial bodily harm on [C.N.]; and
>
> (3) That this act occurred in the State of Washington.

CP at 39. And, as to the charge of unlawful imprisonment, the to-convict instruction provided, in part, that the defendant must have interfered with the victim's liberty by restraining their movements. It read,

> To convict the defendant of the crime of unlawful imprisonment as charged in Count IV, each of the following six elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 30th day of September, 2023, the defendant knowingly restrained the movements of [C.N.] in a manner that substantially interfered with her liberty;
>
> (2) That such restraint was without [C.N.]'s consent;
>
> (3) That the defendant knew that such restraint was without [C.N.]'s consent;
>
> (4) That such restraint was without legal authority;
>
> (5) That the defendant knew that such restraint was without legal authority; and
>
> (6) That any of these acts occurred in the State of Washington.

CP at 50.

During closing argument, the State discussed how the evidence tied to the elements of the charged crimes. For second degree assault, the State argued that Farris assaulted C.N. by punching her repeatedly in the upstairs bathroom. This, the State contended, resulted in the reckless infliction of substantial bodily injury due to the extent of C.N.'s injuries following the incident.

Then, for unlawful imprisonment, the State asked the jury to use their "common sense and experience" to determine whether Farris unlawfully restrained C.N. VRP at 420. The State then specifically described several different acts that it asserted constituted unlawful restraint, including Farris punching C.N. in the bathroom:

> He restrained her several different ways. First, by beating her in the bathroom. She couldn't get away. Secondly, he went downstairs. . . . [S]he said she followed him
> . . . .
>
> [T]hen she said she got to the bottom of the stairs and . . . tried to go to the door, and what did he do? Slapped her hands away from the door. "You can't go. You need to lie down over here." . . . At that point she can't move. . . . [H]e unzips his fly and says[,] "I'm going to pee on you."
>
> A woman her size sitting on a couch, and a man that is . . . 6'5" and 210 pounds is standing over her with his fly open. You think she can just get up and leave at that point? . . . [H]e'd already beat her once. What was going to happen if she got up and tried to run away again?

VRP at 419-20. Throughout its closing argument, the State never mentioned Officer Hoyhtya-Keogh's testimony that C.N.'s in-court testimony was consistent with her report to law enforcement at the scene.

The jury found Farris guilty on several counts—second degree assault–DV, first degree burglary–DV, unlawful imprisonment–DV, and interfering with domestic violence reporting.[2]

---

[2] The jury found Farris not guilty of felony harassment.

The trial court imposed a standard range sentence of 48 months in prison and 18 months in community custody.

Farris appeals.

## ANALYSIS

Farris raises two issues on appeal. First, Farris argues that the trial court erred by permitting Officer Hoyhtya-Keogh to be asked about the consistency of C.N.'s testimony, claiming that it constituted improper vouching and bolstered C.N.'s credibility. Second, Farris argues that his convictions for second degree assault and unlawful imprisonment violate double jeopardy.

### I. ADMISSION OF OFFICER HOYHTYA-KEOGH'S TESTIMONY

Farris argues that when Officer Hoyhtya-Keogh testified that C.N.'s trial testimony was consistent with her statement at the scene, he improperly vouched for her and bolstered her credibility. We disagree. The testimony did not constitute vouching, and any bolstering of C.N.'s credibility, even if inadmissible under ER 801(d)(1)(ii), was harmless.[3]

A trial court's admission of testimony is reviewed under an abuse of discretion standard. *State v. Bluford*, 188 Wn.2d 298, 305, 393 P.3d 1219 (2017). A trial court abuses discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Borboa*, 157 Wn.2d 108, 121, 135 P.3d 469 (2006).

---

[3] Farris also makes two additional arguments for why Officer Hoyhtya-Keogh's answer about C.N.'s statements should have been excluded—unfair "exploitation" of ER 615's exception for excluding witnesses from trial and, separate from his improper vouching argument, improper opinion under ER 701. Br. of Appellant at 24. However, neither of these arguments was raised before the trial court. Because Farris makes no argument under RAP 2.5(a) to suggest we should consider these arguments for the first time on appeal, we decline to review them.

But evidentiary errors may also be harmless. A nonconstitutional error is harmless where there is no reasonable probability that the error materially affected the verdict. *State v. Gunderson*, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014).

Generally, no witness may offer testimony in the form of an opinion regarding the veracity of another witness. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007); *State v. Warren*, 134 Wn. App. 44, 52-53, 138 P.3d 1081 (2006) ("No witness may state an opinion about a victim's credibility because such testimony 'invades the province of the jury to weigh the evidence and decide the credibility of [the witness].' " (alteration in original) (quoting *State v. Jones*, 71 Wn. App. 798, 812, 863 P.2d 85 (1993))), *aff'd*, 165 Wn.2d 17, 195 P.3d 940 (2008). Improper vouching can occur both when a prosecutor provides personal assurances of a witness's veracity and when a witness testifies as to the truthfulness of another witness's testimony. *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995); *State v. Korum*, 157 Wn.2d 614, 651, 141 P.3d 13 (2006). For example, it is improper vouching for a law enforcement witness to say "[the victims] are telling me the truth." *State v. Perez-Valdez*, 172 Wn.2d 808, 817-18, 265 P.3d 853 (2011) (alteration in original).

Here, Officer Hoyhtya-Keogh's testimony falls short of improper vouching. The State's single question was limited exclusively to whether C.N.'s statement was consistent with her testimony:

> [State:] Was [C.N.'s] testimony yesterday consistent with what she told you that night?
> [Officer Hoyhtya-Keogh:] Yes.

VRP at 285. There is nothing in the officer's answer that suggests a comment on C.N.'s veracity. The officer was saying nothing akin to, for example, C.N. was "telling me the truth." *Perez-*

7

*Valdez*, 172 Wn. 2d at 817-18. Thus, we reject Farris' argument that the testimony was improper vouching.

Farris also directs us to *State v. Alexander*, 64 Wn. App. 147, 822 P.2d 1250 (1992), arguing that statements suggesting consistency may still be improper because they can bolster credibility. In *Alexander*, the court explained, separately from a discussion about vouching, that "evidence that [a witness] repeatedly told the same story out of court is not admissible to corroborate or bolster [their] testimony." *Id*.at 152.

The concern raised in *Alexander* appears to be based on the rationale behind ER 801(d)(1) regarding certain past statements of witnesses not being hearsay. The rule provides that a statement is not hearsay if:

> The declarant testifies at the trial or hearing and is subject to cross[-]examination concerning the statement, and the statement is . . . (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

ER 801(d)(1)(ii).

But, as noted in the rule, not all past consistent statements are admissible; there must first be an express or implied charge of recent fabrication. Stated another way,

> While the witness' prior consistent statements are not admissible to prove that the in-court allegations are true, the statements are admissible to rebut a suggestion of recent fabrication. Recent fabrication is inferred when counsel's examination "raise[s] an inference sufficient to allow counsel to argue the witness had a reason to fabricate her story later." The alleged fabrication must be *recent* because if the statement[s] were made *after* the events giving rise to the inference of fabrication, it would have no probative value in counteracting the charge of fabrication.

*State v. Makela*, 66 Wn. App. 164, 168, 831 P.2d 1109 (citations omitted) (quoting *State v. Bargas*, 52 Wn. App. 700, 702-03, 763 P.2d 470 (1988)), *review denied*, 120 Wn.2d 1014 (1992). "Cross-examination that merely attempts to point to inconsistencies in the witness's testimony does not raise an inference of recent fabrication and does not justify admission of prior consistent

statements." *State v. McWilliams*, 177 Wn. App. 139, 148, 311 P.3d 584 (2013), *review denied*, 179 Wn.2d 1020 (2014).

One of the reasons behind this limitation on prior consistent statements is that evidence that simply demonstrates "that the witness said the same thing on other occasions" does not carry much probative value " 'for the simple reason that mere repetition does not imply veracity.' " *State v. Harper*, 35 Wn. App. 855, 858, 670 P.2d 296 (1983) (quoting 4 J. Weinstein & M. Berger, *Evidence* ¶ 801(d)(1)(B)[01], at 801-117 to 118 (1981)), *review denied*, 100 Wn.2d 1035 (1984).

To the extent that Farris is arguing that there was no charge of "recent fabrication" here that would make the officer's statement admissible under ER 801(d)(1)(ii), we agree. Although Farris had challenged C.N.'s credibility, he never made a charge that she had any reason for a "recent fabrication."

But even if the trial court erred when it permitted the officer to confirm that C.N.'s testimony was consistent with her statement to the officer, any error was harmless. There is no reasonable probability that the single question to Officer Hoyhtya-Keogh affected the outcome of the trial. As noted above, even if there is an inference that consistency indicates truth, the inference is weak. *See Harper*, 35 Wn. App. at 858. The probability of this weak inference affecting the verdict is especially remote here because it was a single question and answer. Further, the State never mentioned the testimony again, either in further questioning or in closing argument. The State simply made no argument to the jury at any time that C.N.'s consistent statements supported her credibility. Accordingly, even assuming the admission of the testimony was error, there is no reasonable probability that the testimony affected the jury's verdict, making its admission harmless.

II. DOUBLE JEOPARDY

Farris next argues that his convictions for both second degree assault–DV and unlawful imprisonment–DV violate double jeopardy. He points out that the State argued that the same action, the punching of C.N. in the bathroom, supported both the second degree assault and unlawful imprisonment. And because the State relied on this same evidence to support both crimes, Farris contends that double jeopardy was violated. We disagree.

Double jeopardy protections found in both the Washington State Constitution and the United States Constitution provide that a person shall not face multiple punishments or prosecutions for "the same offense." WASH. CONST. art. I, § 9; *see also* U.S. CONST. amend. V. The constitutional guarantee against double jeopardy protects both against a second trial for the same offense and multiple punishments for the same offense. *State v. Ray*, __ Wn.3d __, 575 P.3d 321, 327 (2025). However, this protection " 'does not prohibit against the imposition of *separate punishments* for *different offenses*.' " *Id.* (internal quotation marks omitted) (quoting *State v. Arndt*, 194 Wn.2d 784, 817, 453 P.3d 696 (2019)).

In the context of multiple punishments from a single trial, like in this case, we apply the "multiple punishments" double jeopardy analytical framework. *Id.* Under this framework, the question becomes whether both of Farris' convictions punish the same offense and whether the legislature intended to impose separate punishments. *State v. Noltie*, 116 Wn.2d 831, 848, 809 P.2d 190 (1991). The delineation of "offenses" is fundamentally a legislative function, so our analysis is anchored in the specific statutes giving rise to the convictions in question and the specific punishments authorized by the legislature. *Ray*, 575 P.3d at 327-28.

In its recent decision in *Ray*, our Supreme Court clarified the four-part test that we apply when assessing double jeopardy claims with convictions arising under different statutes.[4] *Id.* at 328. In the first step of this four-part test, we look at the statutes involved and consider express or implicit legislative intent. *Id.* Second, we apply the *Blockburger*[5] test, also called the same evidence test or the same elements test, to determine if the offenses are the same in fact and in law. *Id.* Under this test, we consider the legal elements of each offense "as charged and proved" at trial. *State v. Muhammad*, 194 Wn.2d 577, 620, 451 P.3d 1060 (2019) (emphasis omitted) (plurality opinion) (Gordon McCloud, J., concurring in part and dissenting in part). Offenses are not the same in law under the *Blockburger* test if each offense requires proof of an element that the other does not. *Ray*, 575 P.3d at 331. When the *Blockburger* analysis establishes that two convictions are not the same in law, no further analysis is required to determine whether they are the same in fact. *See Id.*

Next, for the third step of the four-part test, we determine, when applicable, whether the offenses merge. *Id.* at 328. Fourth, we determine if there are any " 'other indicators of legislative intent' " that present clear evidence that could overcome the presumption established by the *Blockburger* test. *Id.* (quoting *Muhammad*, 194 Wn.2d at 621) (opinion of Gordon McCloud, J.).

Here, we begin our double jeopardy analysis with the four-part test. For step one, neither party has provided any evidence of explicit or implicit legislative intent with respect to the crimes of second degree assault and false imprisonment, so we move to the second step.

---

[4] In cases involving multiple violations of the same statute, we apply the unit of prosecution analysis which asks, "what act or course of conduct has the Legislature defined as the punishable act." *Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014) (quoting *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998)).

[5] *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

For the second step, we analyze whether the offenses are the same in law under the *Blockburger* test. As charged in this case (and as provided in the to-convict instructions), second degree assault required an intentional assault that recklessly caused substantial bodily harm. RCW 9A.36.021(1)(a). Unlawful imprisonment required unlawfully restraining a person without their consent in a manner that substantially interferes with their liberty. RCW 9A.40.040, .010(6). The assault required infliction of substantial bodily harm, while unlawful imprisonment did not; and unlawful imprisonment required a substantial interference with one's liberty, while the second degree assault did not. With these differences, each crime clearly required additional proof of fact that was not required for the other crime, making them not the same in law under the *Blockburger* test. Thus, no further analysis is required to determine whether they are the same in fact.[6] *See Ray*, 575 P.3d at 331 (holding that multiple convictions did not violate double jeopardy because the offenses were not the same in law, despite the fact that the offenses were the same in fact because they were based on the same evidence).

The third step, if applicable, requires analysis of whether the crimes merge. *Id.* at 328 But merger applies "*only* in cases involving lesser included offenses." *Id.* That is not the case here, and in any event, neither party frames the issue as one of merger.

As a final step, we analyze whether there are any " 'other indicators of legislative intent' " to overcome the "strong presumption" established by the *Blockburger* test. *Id.* (quoting *Muhammad*, 194 Wn.2d at 620). Here, no party has offered any indication of legislative intent

---

[6] By focusing on the State's emphasis on the punching in the bathroom for both crimes, Farris' argument primarily relies on establishing that the offenses are the same in fact under the same evidence test aspect of the *Blockburger* test. However, he fails to address whether the offenses were the same in law. *See Ray*, 575 P.3d at 331-32.

that overcomes the strong presumption established by the *Blockburger* test, and we have found none.

Thus, Farris' convictions for second degree assault and unlawful imprisonment do not violate the constitutional prohibition on double jeopardy.

CONCLUSION

We affirm Farris' convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

LEE, P.J.

GLASGOW, J.

13